CHICAGO TRANSIT AUTHORITY, Plaintiff-Appellant, v. THE DEPART-
MENT OF HUMAN RIGHTS *et al.*, Defendants-Appellees.

First District (2nd Division)   No. 86—2728

Opinion filed May 3, 1988.

Sheila Wilson-Freelon, of Chicago Transit Authority, of Chicago, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Eddie Santiago, Assistant Attorney General, of Chicago, of counsel), for appellees.

JUSTICE BILANDIC delivered the opinion of the court:

Plaintiff, Chicago Transit Authority (hereinafter CTA), appeals the denial of its petition for review by the Illinois Human Rights Commission (hereinafter Commission).

Clifton Hall, a discharged employee of the CTA, filed a charge against the CTA with the Illinois Department of Human Rights (hereinafter Department), alleging that he was discharged on the basis of racial discrimination. Pursuant to Department Rules and Regulations (Illinois Department of Human Rights, Rules & Regulations art. IV, §4.4(c)), the complainant Hall and two alleged witnesses in the employ of the CTA were requested to attend a fact-finding conference. The complainant Hall appeared but the CTA refused, and persisted in its refusal, to produce its employees who are alleged to be witnesses. A default order was entered against the CTA, and the issues were determined in favor of Clifton Hall. The CTA filed a petition for review with the Commission. This appeal follows the Commission's denial of the petition for review.

The CTA's principal argument on appeal is that Department Rule 4.4(c) is *ultra vires* in that it extends the purpose of section 7—102(C)(4) of the Illinois Human Rights Act beyond the intent of the legislature. (Ill. Rev. Stat. 1985, ch. 68, par. 7—102(C)(4).) It also contends that even if Rule 4.4(c) is proper, that punishment by entry of default is excessive and an abuse of discretion.

Clifton Hall filed his charge of race discrimination with the Department on November 29, 1982. On February 25, 1983, the CTA received a notice of fact-finding conference schedules for March 21, 1983, and a questionnaire to be answered prior to the conference. On March 7, 1983, the CTA responded by denying that Hall was discharged on the basis of race and set forth the following facts in its letter.

Hall was hired on August 7, 1974, by the CTA as a ticket agent. On July 2, 1982, Hall was working as a ticket agent at the Harrison/State Streets terminal in Chicago, Illinois. On that day, an officer of the Chicago police department tendered a $10 bill for the payment of a $.90 fare. The officer observed the ticket agent register the fare as a transfer, receive and place the $10 bill in his pants pocket. That same day, a total of 24 police officers and civilians tendered fares with market bills. Hall was observed misregistering fares a total of 18 times.

When Hall left the booth for his break on July 2, 1982, an officer of the Chicago police department found the following items on Hall's person: one package of money totaling $15; one package of money totaling $200; one package of money totaling $59; and other monies totaling $395.40. Hall was arrested.

Ms. D. Richardson, the assistant district superintendent of the CTA, and James D. McPhee, ticket agent supervisor, were informed of Hall's alleged activities. Richardson directed McPhee to take over Hall's booth and instructed him to search the booth and find the gun that Hall had told police was in the booth.

A search of the booth revealed $100 concealed behind a water cooler and 50 loose tokens under the board. A .22 magnum high standard derringer pistol and two rounds of ammunition were also found. Richardson went to the police station, where she signed a criminal complaint against Hall.

Hall was discharged for rule violations including: possession of a firearm on duty; failure to properly record fares; failure to properly account for the receipts of the CTA; and use of an unauthorized appliance in the booth.

In addition to the notice of fact-finding conference and questionnaire, the CTA also received a request for the attendance of two of its employees, Richardson and McPhee, at the conference scheduled for March 21, 1983.

On March 17, 1983, the CTA responded by letter and declined the Department's request for the attendance of Richardson and McPhee at the scheduled conference. It stated that these two employees were simply present at the time of the arrest and had no independent knowledge of the incident.

The fact-finding conference was held on March 21, 1983. Richardson and McPhee did not attend. However, the complainant Clifton Hall was present. An attorney appeared on behalf of the CTA. A union representative was also present.

Thereafter, the Department requested additional information

which was provided on April 8, 1983. The CTA addressed the issue of attendance of Richardson and McPhee and again declined to produce these witnesses. The CTA was advised by the Department of its intent to issue a notice of default for failure to attend and allowed the CTA time to respond. The default notice was based on section 4.4(c) of the Department's rules and regulations, which states:

"(c) **Dismissal or Default for Non-Attendance**

The failure of a party to attend the conference after due notice may result in dismissal of the charge, in the case of complainant, or default, in the case of respondent. *A party who appears at the conference exclusively through an attorney or other representative unfamiliar with the events at issue shall be deemed to have failed to attend.* Prior to the entry of a notice of dismissal or default against any party, the Department shall afford that party written notice and a period of at least fifteen days to show good cause in writing why dismissal or default is not appropriate." (Emphasis added.) (Illinois Department of Human Rights, Rules & Regulations, art. IV, §4.4(c).)

The CTA was therefore given until June 13, 1983, to respond or submit a good cause for their "non-attendance" or face the Department's issuance of a default. In response, the CTA reiterated its position that "neither of these employees participated in the investigation, the arrest, the discovery of the gun, or the decision to terminate Mr. Hall." Thus, according to the CTA, these two individuals "will not assist the Department's investigation of this matter."

The Department determined that the CTA's reasons were insufficient to show good cause for its failure to attend. Accordingly, the Department found the CTA in default of the charge and determined the allegations in favor of Hall.

The CTA filed a request for review of the Department's notice of default. On January 30, 1984, a Commission panel upheld the default order. The CTA then filed a petition for rehearing before the full Commission. On May 29, 1984, the full Commission entered an order denying the CTA's petition.

The CTA contends that the notice of default was improperly issued because Rule 4.4(c) is *ultra vires* in that it extends the substantive provisions of section 7—102(C)(4) of the Act.

Section 7—102(C)(4) of the Illinois Human Rights Act provides in pertinent part:

"Upon reasonable notice to the complainant and respondent, the Department may conduct a fact-finding conference. *** A party's failure to attend the conference without good cause

may result in dismissal or default." Ill. Rev. Stat. 1985, ch. 68, par. 7—102(C)(4).

According to the CTA, Rule 4.4(c) grossly narrows the Act by adding that "an attorney or other representative unfamiliar with the events at issue shall be deemed as failed to attend." Illinois Department of Human Rights, Rules & Regulations, art. IV, §4.4(c).)

■■ Uppermost in determining the validity of a regulation is whether it furthers the legislative intent as discerned from the statute. (*Owens-Illinois, Inc. v. Bowling* (1981), 99 Ill. App. 3d 1117, 1125, 425 N.E.2d 1288; 99 Ill. App. 3d 1148, 429 N.E.2d 172, *aff'd as mod.* (1983), 95 Ill. 2d 397, 447 N.E.2d 1324.) While an administrative agency may not issue regulations which exceed or alter its statutory power or which are contrary to the legislative purpose and intent of the statute, it does have authority to regulate and execute the provisions of the statute and to carry out the powers conferred upon it. (*Board of Education v. Eckmann* (1982), 103 Ill. App. 3d 1127, 432 N.E.2d 298, *appeal denied* (1982), 91 Ill. 2d 567.) Further, the promulgated rules and regulations will be presumed to be valid and to have the force and effect of law. *Eckmann,* 103 Ill. App. 3d 1127.

The fact-finding conference is specifically designed for the purposes of obtaining evidence, identifying issues in dispute, ascertaining the positions of the parties, and exploring the possibility of a negotiated settlement of the controversy. (*Eckmann,* 103 Ill. App. 3d 1127.) The importance of the fact-finding conference to the Department's investigation is underscored by the fact that a party's failure to attend without good cause may result in dismissal of the charge or default under the Act. (Ill. Rev. Stat. 1985, ch. 68, par. 7—102(C)(4).) Avoiding unnecessary expenditures of time and money by all parties serves to further the stated policy of the Act.

■ In the case at bar, the response of the CTA indicates that both CTA employees were closely involved in the matters that led to Hall's discharge. Richardson, the assistant district superintendent, directed McPhee, the ticket agent supervisor, to take over Hall's booth when Hall took his break. Richardson directed McPhee to search the booth for evidence, particularly a weapon that Hall told the police was in the booth. One of the alleged reasons for Hall's discharge was the possession of a firearm on duty. In addition, Richardson went to the police station where she signed a criminal complaint against Hall. Obviously, Richardson and McPhee were not remote, disinterested observers, but persons whose testimony appears to be relevant and material. If the complainant Hall failed to appear and persisted in his refusal to appear, the CTA would have been entitled to have Hall's

complaint dismissed.

The rule defines what will be deemed as a "failure to attend" the fact-finding conference for purposes of dismissal or default. The rule directs that only those parties familiar with the events at issue will be deemed to have appeared at a fact-finding conference. Refusal to produce witnesses at the fact-finding conference who are familiar with the events hampers the Department's investigation, is an unnecessary expenditure of time and money, and is tantamount to no appearance whatsoever.

The CTA chose to be represented exclusively through an attorney who had no firsthand knowledge of the facts which ultimately led to Hall's discharge. As the Commission aptly observed:

"Since the Respondent's attorney could not give direct evidence of what occurred, the Department's investigator would not be in a position to find out what the Respondent actually knew about the instant case. Instead, all the investigator would be left with would be a second hand account of the Respondent's official version of the facts ***."

This kind of representation clearly offends the purpose and intent of section 7—102(C)(4). The rule promotes the purpose of the fact-finding conference and is, therefore, a proper exercise of administrative power.

The CTA argues that the issuance of a default was too severe a sanction because the CTA's actions could not be considered a contumacious disregard of the Department's authority.

Although the entry of default is considered a drastic punishment and not favored by the courts, it may be resorted to when the defendant has "shown a deliberate, contumacious, and unwarranted disregard of the rules of discovery or orders compelling discovery." (*George Williams Hoffman & Co. v. Capital Services Co.* (1981), 101 Ill. App. 3d 487, 428 N.E.2d 600.) The sanction of default is authorized under Supreme Court Rule 219 (107 Ill. 2d R. 219) where a party's disregard of discovery was unreasonable. *Servbest Foods, Inc. v. Emessee Industries, Inc.* (1980), 82 Ill. App. 3d 662, 403 N.E.2d 1, *appeal denied* (1980), 81 Ill. 2d 599.

In the instant case, notice was sent to the CTA on February 25, 1983, regarding the fact-finding conference. This notice requested the attendance of Richardson and McPhee. On March 17, 1983, the CTA sent a letter to the Commission declining the Department's request to produce the two witnesses, stating they had no knowledge of the events. On March 21, 1983, the conference was held without the two witnesses. The Department again requested these witnesses and the

CTA declined.

On May 24, 1983, the CTA received notice that it may be defaulted and was given until June 13, 1983, to show good reason for not attending the conference. On June 14, 1983, the CTA filed its response restating its position. The CTA was found in default on June 21, 1983.

■ It is clear that the CTA was given several opportunities to either present the witnesses as requested or submit good reason for its nonattendance. The CTA did neither. This constitutes a deliberate, contumacious and unwarranted disregard of the Department's investigatory authority. The default is justified.

Finally, the CTA argues that the Department failed in its duty to investigate by not subpoenaing the aforementioned witnesses under section 7—102(C)(2) of the Act (Ill. Rev. Stat. 1985, ch. 68, par. 7—102(C)(2)).

Section 7—102(C)(2) indeed authorizes the Department as part of its investigatory powers to request from any member of the Commission the issuance of a subpoena in order to compel the attendance of any witnesses to a conference. (Ill. Rev. Stat. 1985, ch. 68, par. 7—102(C)(2).) However, there is absolutely no authority for the position that the Department must request subpoenas before arranging for the attendance of the parties at a fact-finding conference.

■ The statute states that a default may be issued for failure to attend the fact-finding conference. After several requests, the CTA failed to appear thus justifying the default. The Department is not required to issue subpoenas prior to the entry of a default.

The decision of the Illinois Human Rights Commission is affirmed. However, since this is a case of first impression, we remand this cause to the Commission with directions to give the CTA an opportunity to forthwith comply with the order of the Commission by producing the witnesses and proceeding with the hearing on the merits in an expeditious manner.

Affirmed and remanded with directions.

HARTMAN, P.J., and STAMOS*, J., concur.

---

*Justice Stamos participated in oral argument and concurred in this opinion prior to leaving the appellate court.