FIRST DIVISION

November 21, 2005

No. 1-03-3158

DENNY'S, INC.,

Petitioner,

v.

THE DEPARTMENT OF HUMAN RIGHTS; THE HUMAN RIGHTS COMMISSION; THE DIRECTOR OF THE DEPARTMENT OF HUMAN RIGHTS, Rocco J. Claps; THE CHIEF LEGAL COUNSEL FOR THE DEPARTMENT OF HUMAN RIGHTS, Jackie Lustig; AND NATHANIEL WASHINGTON,

Respondents. 

))))

))

)

)

)

)

)

)

)

)

Appeal from 

Illinois Department of Human Rights (Charge No. 1999CP2862) and the Illinois Human Rights Commission (ALS No. 11452) 

JUSTICE McBRIDE delivered the opinion of the court:

Denny's, Inc., (Denny's), seeks administrative review of a default order entered by the Illinois Human Rights Commission (Commission) against Denny's on Nathaniel Washington's charge of race discrimination in a place of public accommodation.  Denny's also contests a separate order of the Commission awarding Washington $40,000 for emotional damages, $28,816 for attorney fees, and $1,293 for costs.  Denny's argues the default order should be reversed because Denny's demonstrated "good cause" for its failure to attend a fact-finding conference scheduled by the Illinois Department of Human Rights (Department) after Washington filed the charge, rather than " 'deliberate, contumacious, and unwarranted disregard' " for the investigatory authority of the Department as required under 
Chicago Transit Authority v. Department of Human Rights
, 169 Ill. App. 3d 749, 754, 523 N.E.2d 1108, 1112-13 (1988), quoting 
George Williams Hoffman & Co. v. Capital Services Co
., 101 Ill App. 3d 487, 493-94, 428 N.E.2d 600 (1981).  Denny's also argues the damage award is not supported by the allegations in Washington's written charge or by the manifest weight of evidence adduced at a hearing conducted by an administrative law judge.  Lastly, Denny's argues the amount of attorney fees awarded is unreasonable.

Washington filed a charge of discrimination with the Department alleging that because he was "black," a partially-eaten chicken wing was concealed within his pot roast dinner when he ate at the Denny's Restaurant located in Melrose Park, Illinois, on December 21, 1998.  He also alleged he and his wife were "the only black patrons in the restaurant" at the time.  Further, within two days he suffered a flu-like illness of unspecified duration and also "suffered severe emotional trauma, depression, extreme fear, and anxiety" about the possibility of contracting a communicable disease from the chicken.  Washington did not specify why he attributed the incident to racial discrimination.  He filed his original charge on or about March 26, 1999, and a technical amendment on December 6, 1999, relabeling it as a charge of public accommodation discrimination.

The Department mailed a notice of the charge to Denny's on June 28, 1999.  Kimberly Alexander, who worked in Denny's legal department in Spartanburg, South Carolina, mailed Denny's response to the Department on July 19, 1999.  The Department then notified the parties by telephone on September 9, 1999, and by mail on September 10, 1999, that it had scheduled a fact finding conference for November 16, 1999, in the Department's Chicago offices, specifically, "9:00 a.m. at the Department of Human Rights, 100 W. Randolph St., 10th floor, Chicago, IL  60601."  The written noticed indicated a fact-finding conference is "an investigative forum intended to define the issues, determine which facts are undisputed, obtain evidence and ascertain whether there is a basis for a negotiated settlement of the charge."  The written notice to Denny's was mailed to Alexander in Denny's legal department in Spartanburg, South Carolina, and sought the attendance of food server Cindy Villanueva, "service coord." Mary E. Kahn, and cook, Antonio [Rodriguez].  

Denny's subsequently retained a Chicago attorney.  On November 4, 1999, the attorney, Robert E. Kinchen, filed an appearance.  On November 10, 1999, Kinchen responded to a request from the Department for additional information by submitting (a) a copy of the Washingtons' meal ticket for December 21, 1998, (b) a copy of handwritten note regarding a telephone call from Alice Washington to the Melrose Park Denny's, (c) a list of employees at the Melrose Park Denny's, (d) a copy of Denny's policy for addressing customers' complaints, and (e) documentation of complaints lodged between December 1996 and June 1999.  It is unclear from the record when the Department requested these documents.  Kinchen sent the documents by messenger to Department investigator Don Nosbaum, and in addition to this written communication, he had several telephone conversations with Nosbaum regarding the investigation.

On the day of the fact-finding conference, attorney Kinchen telephoned the Department at approximately 8:50 a.m. and was told that the conference was about to begin.  Kinchen stated Denny's had not been notified of the fact-finding conference and would not attend, and he asked for a continuance.  The Department indicated Denny's should respond to a request to show cause that the Department would issue and that Denny's response would receive due consideration.  Kinchen, nevertheless, went to the conference, arriving 15 minutes after it began.  He reiterated that Denny's had not received notice and again asked for a continuance.  The Department indicated that an attorney's attendance at a fact-finding conference is not a substitute for a respondent's attendance (see 56 Ill. Adm. Code §2520.440(d) (1996)), and that after reviewing Denny's response to the request to show cause that would be issued, the Department would decide whether to proceed with its investigation into Washington's charge.  The conference then proceeded as scheduled without Denny's participation.

Kinchen investigated and on December 8, 1999, obtained affidavits from two of the requested witnesses -- Antonio Rodriguez, who indicated in his sworn statement that he was the cook when the Washingtons ate at Denny's, and Mary E. Kahn, who indicated in her sworn statement that she worked as a server that day.  In their separate affidavits, Rodriguez and Kahn both swore, "I was and am willing to testify in a fact finding hearing relating to [Washington's] complaint.  I was unable to determine the location of the place of the hearing.  Arrangements are being made to assure that I will be available for a hearing in the future."

On December 9, 1999, the Department issued a notice to show cause why a default should not be entered pursuant to section 7A-102(C)(4) of the Illinois Human Rights Act (775 ILCS 5/7A-102(C)(4) (West 1998)) (Act) due to Denny's failure to attend the fact-finding conference.  The cited section of the Act states in relevant part:

"Upon reasonable notice to the complainant and the respondent, the Department shall conduct a fact finding conference prior to 365 days after the date on which the charge was filed ***.  If the parties agree in writing, the fact finding conference may be held at a time after the 365 day limit.  Any party's failure to attend the conference without good cause shall result in dismissal or default.  The term 'good cause' shall be defined by rule promulgated by the Department."  775 ILCS 5/7A-102(C)(4) (West 1998).

In accordance with section 7A-102(C)(4), the Department promulgated rules indicating that "good cause" is defined as "conditions such that a reasonable person would not attend a fact-finding conference" (56 Ill. Adm. Code §2520.10 (1996) (definition of terms)), and includes but is not limited to death or sudden serious illness of a party or an immediate family member of a party scheduled to attend a fact-finding conference (56 Ill. Adm. Code §2520.440(d)(3) (1996) (procedures regarding fact-finding conferences)).  In addition:

"In assessing good cause, the factors which the Department may consider shall include, but shall not be limited to, whether the party has provided timely notice of its inability to attend the fact finding conference and whether the party has complied with the Department's request for documentation of the reason for not attending the conference."  56 Ill. Adm. Code §2520.440(d)(4) (1996).

It does not appear, however, that the Department actually employs the definition or examples set out in the administrative code; it did not use the "reasonable person" standard in this case or in any of the cases cited by the parties.

On December 22, 1999, Denny's responded to the Department's notice to show cause, by providing Rodriguez's and Kahn's affidavits regarding their absence from the fact-finding conference and pointing out that, with the exception of the conference, Denny's had participated in the investigation of Washington's charge since its inception.  Denny's argued that default was a drastic sanction to be used only as a last resort when a respondent's conduct was unreasonable and that public policy favored deciding Washington's charge on its merits.  On February 9, 2000, the Department rejected this argument and issued a notice of default.

Denny's requested a review of the Department's determination; however, on November 20, 2000, the Department's chief legal counsel designee sustained the notice of default, indicating that default was warranted under two different standards.  The first standard, adopted by this court in 
Chicago Transit Authority
, 169 Ill. App. 3d at 754-55, 523 N.E.2d at 1111-12 (hereinafter, in text, 
CTA
), provides that a default is justified when, instead of "good cause," a respondent has "shown deliberate, contumacious, and unwarranted disregard" for the investigatory authority of the Department.  With regard to Denny's, the designee stated:  "In the instant case, the Department made two requests for Respondent to attend the fact finding conference; Respondent agreed to attend.  In not attending the fact finding conference, Respondent deliberately and contumaciously disregarded the [Human Rights] Act and the Department's Rules."

The designee also indicated:  "Even if Respondent's conduct does not constitute deliberate and contumacious disregard of the Act and the Department's Rules, default is proper."  The designee indicated the 
CTA
 standard was rejected by the Commission in 
Coleman v. Methodist Youth Services, Inc.
, Ill. Hum. Rts. Comm'n Rep. 1993CF3122 (December 10, 1997), and that under 
Coleman
, default was justified if a respondent showed mere negligence in failing to attend a fact-finding conference.  The designee then found:

"17. *** In the instant case, Respondent was not confused as to whether or not the fact finding conference would be held.  Respondent received the Notice of Fact Finding Conference and informed its witnesses of the conference.

***

19.  In the final analysis, Respondent has failed to provide good cause for its failure to attend the fact finding conference in this matter."

The Human Rights Commission subsequently entered the order of default from which Denny's seeks this court's direct review.  

The Commission's default order also referred the matter to an administrative law judge "for a hearing on damages."  After conducting a public hearing, the administrative law judge issued a recommended order and decision to the Commission, proposing that Washington be awarded $40,000 for emotional damages, $28,816 for attorney fees, and $1,293 for costs.  Both Washington and Denny's filed exceptions to the recommended order and decision.  Washington contended his attorney was due a higher hourly rate, and Denny's contended there was insufficient evidence to support any award for emotional damages.  The Commission then remanded the matter to the administrative law judge for a further report on the basis for awarding emotional damages to Washington, and the administrative law judge issued a supplemental recommended order and decision to the Commission.  A three-member panel of the Commission subsequently issued an order and decision in which it sustained and incorporated the original and supplemental recommendations of the administrative law judge.  Denny's seeks review of this additional order.

Denny's first contention regarding the default order is that the 
CTA
 standard (
Chicago Transit Authority
, 169 Ill. App. 3d at 755, 523 N.E.2d at 1112) is still controlling, but, regardless of whether the 
CTA
 or 
Coleman
 standard is employed, the default was unwarranted.

The respondents
(footnote: 1) contend that 
CTA
 and subsequent cases employing the 
CTA
 standard were rendered "irrelevant" by a 1995 amendment to section 7A-102(C)(4) of the Act and that 
Coleman
 reflects the legislature's current intent as to when a default is justified.  While the pre-1995 version of the Act provided, "A party's failure to attend the conference without good cause 
may
 result in dismissal or default" (emphasis added) (775 ILCS 5/7A-102(C)(4) (West 1994), the amended, current version (set out in greater detail above) provides that, "Any party's failure to attend the conference without good cause 
shall
 result in dismissal or default" (emphasis added)  (775 ILCS 5/7A-102(c)(4) (West 1996)).  We are not persuaded by the respondents' argument. 

An administrative agency's interpretation of a statute, including a statute it is charged with administering, is not binding on this court (
Richard's Tire Co. v. Zehnder
, 295 Ill. App. 3d 48, 692 N.E.2d 360 (1998) (determining whether previous or amended version of statute was controlling, and declining to interpret statute in light of administrative rules and regulations)), and we address the proper construction of the statute 
de novo
.  
In re D.F.
, 332 Ill. App. 3d 112, 119, 772 N.E.2d 939, 945 (2002) (addressing significance of statutory amendment).  

The objective of this court in construing a statute is to give effect to the intention of the legislature.  
In re D.F.
, 332 Ill. App. 3d at 119, 772 N.E.2d at 945; 
Richard's Tire Co.
, 295 Ill. App. 3d at 57, 692 N.E.2d at 367.  The language of a statute is considered the best indicator of the legislature's intent (
Richard's Tire Co.
, 295 Ill. App. 3d at 58, 692 N.E.2d at 367), and where statutory language is clear and unambiguous, a court must give effect to the statute as written.  
In re D.F.
, 332 Ill. App. 3d at 119, 772 N.E.2d at 945.  In addition, when the legislature has amended a statute after it has been interpreted by the courts, it is presumed that the legislature was aware of the judicial construction and that it acted with that knowledge.  
In re D.F.
, 332 Ill. App. 3d at 119, 772 N.E.2d at 945; 
La Salle Partners, Inc. v. Property Tax Appeal Board
, 269 Ill. App. 3d 621, 629, 646 N.E.2d 935, 940 (1995) (interpreting statute amended several times without change to the language at issue).  Therefore, where an amendment does not change the substance of a statute, prior judicial interpretations retain their validity. 
 In re D.F.
, 332 Ill. App. 3d at 119, 772 N.E.2d at 945.  In effect, the legislature's reenactment of statutory language constitutes an adoption of prior judicial constructions.  
La Salle Partners, Inc.
, 269 Ill. App. 3d at 629, 646 N.E.2d at 940.

Accordingly, we may presume that when reenacting section 7A-102(C)(4) of the statute without addressing "good cause," the legislature was aware of, and acquiesced in, the construction of "good cause" given by the appellate court in 
CTA
.  There is no indication in the wording of the amended statute that the legislature intended to change the construction of "good cause."  What the respondents fail to acknowledge is that when the legislature changed "may" to "shall," the legislature merely removed the administrative agencies' discretion as to whether a default would be entered if "any party fail[ed] to attend the conference without good cause."  By changing "may" to "shall," the legislature mandated that a default be entered in the absence of a showing of good cause, rather than permitting a default to be entered in the absence of a showing of good cause.  This constriction on the agencies' powers did not authorize the Commission to subsequently expand the definition of "good cause" so that it included not only 
CTA
's "deliberate, contumacious, and unwarranted disregard of the Department's investigatory authority," but also 
Coleman
's "mere negligence" in failing to attend a scheduled fact-finding conference.  In 
Coleman
, the Commission acknowledged that "mere negligence is not deliberate and contumacious violation of the Department's notice of fact-finding conference" (
Coleman
, Ill. Hum. Rts Comm'n Rep. 1993CF3122 (December 10, 1997)), and we conclude that once it acknowledged this, the Commission should have gone no further.  In light of the nature of the legislature's amendment to the statute at issue, we find that 
Coleman
 was wrongly decided and that the 
CTA
 standard prevails.

The next question is whether the record supports the conclusion that Denny's failed to provide "good cause" for its failure to attend to attend the scheduled conference.  While we exercise independent review over questions of law or statutory construction, the findings and conclusions of an administrative agency on questions of fact are considered
 prima facie
 true and correct, and we must sustain the Commission's findings of fact unless we determine the findings are against the manifest weight of the evidence.  
Baksh v. Human Rights Comm'n
, 304 Ill App. 3d 995, 999-1000, 711 N.E.2d 416, 419-20 (1999).  An administrative agency's factual findings are contrary to the manifest weight of the evidence where the opposite conclusion is clearly evident.  
City of Belvidere v. State Labor Relations Board
, 181 Ill. 2d 191, 692 N.E.2d 295 (1998).  

After considering the record in light of these principles, we find that it does not support the conclusion that Denny's failure to attend the fact-finding conference was a "deliberate, contumacious and unwarranted disregard of the Department's investigatory authority."  
Chicago Transit Authority
, 169 Ill. App. 3d at 755, 523 N.E.2d at 1112.  

In 
CTA
, in answer to a charge of race discrimination, the Chicago Transit Authority indicated a ticket agent had been justifiably discharged, in part for possessing a firearm on duty and failing to properly record fares and account for receipts.  
Chicago Transit Authority
, 169 Ill. App. 3d at 751, 523 N.E.2d at 1110.  The transit authority specified that after being tipped off by the Chicago police, a transit authority supervisor searched the ticket agent's booth and found concealed cash, transit tokens, and a firearm.  
Chicago Transit Authority
, 169 Ill. App. 3d at 751, 523 N.E.2d at 1110.  Also, a transit authority superintendent who ordered the supervisor to search the ticket booth also signed a criminal complaint against the ticket agent.  
Chicago Transit Authority
, 169 Ill. App. 3d at 751, 523 N.E.2d at 1110.  Despite their stated involvement in the ticket agent's termination, the transit authority declined the Department's request to send the supervisor and superintendent to a fact-finding conference.  
Chicago Transit Authority
, 169 Ill. App. 3d at 751-52, 523 N.E.2d at 1110.  The transit authority took the position that the two requested employees were merely present when the ticket agent was arrested and that they had no independent knowledge of the incident.  
Chicago Transit Authority
, 169 Ill. App. 3d at 751, 523 N.E.2d at 1110.  After the fact-finding conference was conducted without the participation of the supervisor and the superintendent, the Department requested additional information from the transit agency.  
Chicago Transit Authority
, 169 Ill. App. 3d at 752, 523 N.E.2d at 1110.  The transit authority responded, addressing the issue of the attendance of the supervisor and superintendent, and again declined to produce them as witnesses.  
Chicago Transit Authority
, 169 Ill. App. 3d at 752, 523 N.E.2d at 1110.  When given notice of default for failure to attend, the transit authority reiterated " 'neither of these employees participated in the investigation, the arrest, the discovery of the gun, or the decision to terminate.' "  
Chicago Transit Authority
, 169 Ill. App. 3d at 752, 523 N.E.2d at 1111.  After the default was issued, the transit authority sought review, arguing the sanction imposed was too severe.  
Chicago Transit Authority
, 169 Ill. App. 3d at 754, 523 N.E.2d at 1112.  The appellate court disagreed, finding that even though it was "clear" the transit authority had been "given several opportunities to either present the witnesses as requested or submit good reason for its nonattendance.  The [transit authority] did neither.  This constitutes a deliberate, contumacious and unwarranted disregard of the Department's investigatory authority.  The default is justified."  
Chicago Transit Authority
, 169 Ill. App. 3d at 755, 523 N.E.2d at 1113.  However, since it was a case of first impression, the court remanded the cause in order to give the transit authority another opportunity to produce the two witnesses.  
Chicago Transit Authority
, 169 Ill. App. 3d at 755, 523 N.E.2d at 1113.

 The Commission subsequently applied the 
CTA
 standard in 
D&P Construction Co. v. Department of Human Rights
, Ill. Hum. Rts. Comm'n Rep.1994CF1105 (January 24, 1997), in which the respondent corporation's president did not attend a fact-finding conference due to " 'unforeseen circumstances,' " which the corporation failed to elaborate on.  The respondent corporation argued, however, that default was unwarranted because the complainant had admitted certain facts which made it clear he was not the victim of discrimination and because the corporation's "president at the time of the events in question has left, and the new president has no personal knowledge of the events surrounding the complainant's charge" (implying "that it would be a waste of time for the Department's investigator to interview the current president").  
D&P Construction. Co.
, slip op. at ___.  The Commission rejected these arguments, noting that it was not within the respondent's discretion to decide it no longer needed to cooperate with the Department's investigation or to decide which individual was  relevant to the Department's investigation.  Nevertheless, the Commission set out the 
CTA
 standard and noted that prior to its failure to attend the fact-finding conference, the respondent corporation had cooperated with the Department's investigation by submitting a verified response to the charge of discrimination and tendering over a 100 pages of materials in response to the Department's inquiries.  Although cautioning that it was not endorsing the respondent's failure to attend the conference, "[i]n light of the previous cooperation of the respondent," the Commission vacated the default and remanded the case for further proceedings.

Similarly, in 
Johnson v. Kindercare Learning Center
, Ill. Hum. Rts. Comm'n Rep. 1993SF0229, slip op. at ___ (April 28, 1995), the Commission struck a notice of default issued by the Department and remanded a discrimination charge for its further investigation, after emphasizing "[t]here is a significant public policy in favor of deciding [discrimination charges] based on the merits," and that the Commission "has not lightly ignored" the merits of discrimination charges in order to resolve them on a default basis.  This court elaborated on the public policy of resolving complaints on their merits and the extreme nature of default orders, in 
Smith v. City of Chicago
, 299 Ill. App. 3d 1048, 702 N.E.2d 274 (1998):

"The underlying spirit of our system of civil justice is that controversies should be determined according to the substantive rights of the parties.  This notion is not only intuitive --  it is the articulated public policy of the state.  See 735 ILCS 5/1-106 (West 1996).  Dismissal of an action or the entry of an order of default may be an appropriate sanction for a party's refusal to obey a valid court order.  However, such a drastic sanction, being the antithesis of a determination of a cause on its merits, should be employed only as a last resort after all other enforcement powers at the court's disposal fail.  When, as in this case, sanctions are visited upon a party as vicarious punishment for the acts of her counsel, care must be taken in fashioning a sanction that both adequately addresses the offending conduct and, to the extent possible, preserves the right of the party to be heard on the merits of her case."  
Smith
, 299 Ill. App. 3d at 1054-55, 702 N.E.2d at 279.

The respondent in 
Johnson
 failed to attend a fact-finding conference after erroneously assuming it had been cancelled because the written response to the complainant's charge purportedly "took care of the contested issues" and the Department had not confirmed that the conference would proceed after it received the response.  
Johnson
, slip op. at ___.  Although the respondent's "misunderstanding was entirely the fault of [the respondent]," the Commission took into consideration that there was "no indication *** the respondent ha[d] failed to cooperate with the investigation in any other way" and that the day after the conference, upon realizing it had misunderstood the Department's procedures, the respondent contacted the Department, apologized, and agreed to cooperate in any way necessary to reschedule the fact-finding conference."  
Johnson
, slip op. at ___.  The Commission summed up, "Put simply, this is not a respondent which has ignored its responsibilities to cooperate with the Department in its investigation."  
Johnson
, slip op. at ___.   The Commission also suggested that a lesser sanction would have still allowed the Department to make a decision based on the merits of the evidence presented.  "Under the[s]e circumstances, and in light of the strong public policy in favor of a decision on the merits, [the Commission determined] that the Department erred when it held the respondent in default."  
Johnson
, slip op. at ___.  

Of the three Commission orders set out above, 
Johnson
 is the most factually similar to the present circumstances.  Denny's legal department in Spartanburg, South Carolina, cooperated with the Department's investigation, submitting not only a written response to Washington's charge of discrimination, but also participating in a telephone conversation with the Department's investigator about its availability for a fact-finding conference.  The additional fact that the legal department retained local counsel to cooperate with the Department's investigation is also indicative of a lack of deliberate, contumacious disregard for the Department's investigatory authority.  It is apparent that Denny's legal department informed its newly retained attorney, Kinchen, about the Department's previous request for more information, since in early November 1999, Kinchen submitted various documents previously requested by the Department.  There is no indication in the record, however, that Denny's also informed Kinchen of the fact-finding conference scheduled for the middle of November 1999.  Nevertheless, when Kinchen telephoned the Department and was told that the conference was about to begin, with apparent due respect for the Department's investigatory authority, he hurried to the scheduled location, arrived shortly after the conference started, and requested a continuance.  In addition, Denny's posture regarding the participation of witnesses requested by the Department contrasts sharply with the circumstances described in 
CTA
, where the respondent repeatedly refused to produce witnesses who were "[o]bviously *** relevant and material" to the Department's investigation, since they were "closely involved in the matters that lead to [the complainant's] discharge."  
Chicago Transit Authority
, 169 Ill. App. 3d at 753, 523 N.E.2d at 1112.  Nothing in the record on appeal even remotely indicates that Denny's deliberately or contumaciously disregarded the Department's request to produce witnesses at the scheduled fact-finding conference.  To the contrary, Denny's submitted the affidavits of two requested witnesses, the cook who prepared Washington's meal, and a server who interacted with Washington, indicating the witnesses had been and continued to be "willing to testify" in the investigation, but had been "unable to determine the location of the place of the hearing."  The chief legal counsel's designee remarked in her order sustaining the default that "Respondent," meaning the two witnesses, were "not confused as to whether or not the fact-finding conference would be held."  However, the witnesses' sworn affidavits indicated they were unable to find the conference location specified by the Department, and it appears they showed due respect for the Department's investigatory authority by further swearing that "[a]rrangements [were] being made to assure that [they would] be available for a hearing in the future."  We are not persuaded by the respondents' suggestion that since attorney Kinchen was able to appear at the conference, the witnesses should have been able to appear as well.  The fact that an attorney with a downtown Chicago office (One South Wacker Drive) was capable of hurrying to another downtown Chicago location (100 West Randolph Street) within a few minutes tells us nothing about the ability of two Melrose Park restaurant workers to locate a downtown Chicago address in time for a 9 a.m. conference.  Like the respondent in 
Johnson
, Denny's failure to attend the conference is entirely attributable to Denny's own personnel, yet the failure was not intentional and it does not support the conclusion of the chief legal counsel's designee that Denny's "deliberately and contumaciously disregarded" the Department's authority.  Rather, the opposite conclusion is clearly evident.

For these reasons, we reverse the default order entered against Denny's, vacate the order awarding Washington damages, attorney fees, and costs, and remand this cause for further proceedings consistent with this determination. 

Reversed and remanded. 

CAHILL, P.J. and GORDON, J., concur.

FOOTNOTES
1:  Although Washington was named as a co-respondent to this review, our references to "respondents" encompass only the Department, its director, the Commission, and its chief legal counsel.