THE CITY OF CHICAGO, Appellant, v. THE HUMAN RIGHTS COMMIS-
SION, Appellee (Richard Foss, Appellee and Cross-Appellant).

First District (5th Division)   No. 1—92—2643

Opinion filed June 24, 1994.

Susan S. Sher, Corporation Counsel, of Chicago (Lawrence Rosenthal, Benna Ruth Solomon, and Mardell Nereim, Assistant Corporation Counsel, of counsel), for appellant.

Kinoy, Taren, Geraghty & Potter, P.C., of Chicago (Miriam N. Geraghty, of counsel), for appellee Richard Foss.

JUSTICE COUSINS delivered the opinion of the court:
Complainant, Richard Foss (Foss), filed an action with the Illinois

Department of Human Rights against the City of Chicago (City) alleging that the City had discriminated against him on the basis of his handicap when it refused to allow him to return to work after medical leave. The Illinois Human Rights Commission (Commission) issued a decision sustaining Foss' claim and ordering that Foss be reinstated in his former position at the Chicago fire department with back pay and benefits. The City appealed the Commission's decision, and Foss filed a cross-appeal. Subsequently, we granted the City's motion to dismiss its appeal, but allowed Foss' cross-appeal to remain before this court. In his cross-appeal, Foss argues that the Commission abused its discretion by offsetting the disability pension benefits he had received against his back pay award. The City challenges our jurisdiction to hear the cross-appeal.

We affirm.

BACKGROUND

Foss was hired by the City of Chicago fire department as a fire fighter on October 16, 1966, and in 1973, he was promoted to a position of fire engineer. In May 1983 and again in January 1984, Foss fainted without warning. Foss was hospitalized in January and diagnosed as having syncope, which is sudden, brief unconsciousness. While he was hospitalized, he underwent a series of examinations and tests.

Dr. Petropoulos, a cardiac specialist, concluded that Foss had no clear cardiac difficulties. In addition, Dr. Schwartz, a neurologist, found that Foss had no discernable neurological abnormalities. Dr. Schwartz recommended treatment with Dilantin, a seizure medication, to prevent further fainting episodes, and he also recommended limited short-term restrictions for Foss, such as decreasing alcohol consumption and ceasing driving a vehicle. Although the physicians were unable to ascertain the cause of Foss' syncope episodes, generally accepted medical practice indicated that Foss could resume his normal duties, including those duties associated with his job as a fire engineer, within six months to a year, if he remained syncope free for that period. Foss did not have any other syncope episodes after the one he experienced in January 1984.

Dr. Mesnick, the medical director for the City, was responsible for examining injured and disabled employees to determine if the employees could be returned to full-time, unrestricted duty. On May 30, 1984, Dr. Mesnick placed Foss on long-term medical leave.

On June 30, 1984, Dr. Patricoski, one of Foss' treating physicians, released Foss to unrestricted duty. Although Foss submitted the release to Dr. Mesnick, Dr. Mesnick refused to release Foss to work.

Foss obtained a second letter, dated September 13, 1984, from Dr. Patricoski releasing him to duty without restriction. In that letter, Dr. Patricoski reiterated that though his diagnosis remained syncope of undetermined origin, Foss could return to work, resume driving, and resume all physical activity.

On November 9, 1984, Foss asked Dr. Mesnick if he could be placed on limited duty and the doctor denied his request. In December of 1984, as Foss approached the end of one year of medical leave, Dr. Mesnick determined that Foss would not be allowed to return to duty in January of 1985. Dr. Mesnick diagnosed Foss as having high grade ventricular arrhythmia, a heart condition. His diagnosis was not based on his examination of Foss, reports submitted by physicians who had personally treated Foss, or the laboratory tests ordered by Dr. Mesnick.

On December 14, 1984, Dr. Petropoulos, the cardiac specialist, sent a letter to the City explaining that an extensive cardiac workup had been performed on Foss and that it revealed no structural heart disease or clinical arrhythmia. Dr. Petropoulos concluded that Foss' workup was essentially normal and, in his opinion, Foss had no significant heart rhythm disturbance.

On January 10, 1985, Dr. Winterfield, another cardiac specialist, sent a letter to the City stating that Foss' condition had been stable for a considerable period of observation and that there was no evidence that Foss had heart disease. Therefore, he concluded that Foss could return to regular duties.

After Foss learned that Dr. Mesnick would not reinstate him to duty, he requested a leave of absence so that he could apply for disability benefits from the Firemen's Annuity and Benefit Fund (Pension Board); he applied for benefits on December 20, 1984. The Pension Board relied on its physician consultant, Dr. Motto, to advise it about the medical conditions of individuals applying for disability pensions. Dr. Motto was the only person who testified before the Pension Board in connection with Foss' application for benefits. He stated, without reference to any particular findings, that he agreed with Dr. Mesnick, that there appeared to be a strong relationship between Foss' irregular heartbeat and his fainting spells. On February 20, 1985, the Pension Board approved disability benefits for Foss.

Subsequently, on April 25, 1985, Foss filed a claim with the Illinois Department of Human Rights, alleging that the City had engaged in unlawful discrimination. An initial hearing was conducted before an administrative law judge (ALJ), who then issued an interim recommended order and decision. In concluding that Foss had met the burden of establishing a *prima facie* case of discrimination based

on handicap, the ALJ made the following factual findings. Foss possessed the determinable physical disability of a history of syncope, but that physical disability was unrelated to his ability to perform the duties of his job as a fire engineer. Nonetheless, the City discriminated against Foss on the basis of this handicap in violation of the Illinois Human Rights Act (775 ILCS 5/1—101 *et seq.* (West 1992)) and, therefore, Foss was entitled to an award of damages. The ALJ recommended that Foss be reinstated in his position as a fire engineer and given an award for back pay. The ALJ did not deduct the amount of pension benefit payments Foss received from the back pay award because the ALJ concluded that the pension benefits came within the collateral source rule. Both parties filed exceptions to the interim recommended order and decision.

On March 13, 1992, the Human Rights Commission issued its decision, which affirmed and adopted most of the ALJ's findings. However, the Commission determined that the pension benefits Foss had received should be deducted from the back pay award and gave the following rationale:

> "Under Section 8A—104 of the Act, Ill. Rev. Stat. 1989, ch. 68, par. 8A—104, the Administrative Law Judge has the discretion of recommending any relief which will make the complainant whole. Under this provision, the operative term is relief which will make the complainant whole. The remedy afforded complainants should place them in the position they would have been had the respondent not violated the Act. The remedy should not, however, place the complainant in a better financial position than he or she would have been had discrimination not occurred."

The City filed a petition for direct appellate review of the Commission's decision in accordance with section 8—111 of the Illinois Human Rights Act (775 ILCS 5/1—101 *et seq.* (West 1992)) and Supreme Court Rule 335 (134 Ill. 2d R. 335). Foss filed a cross-appeal challenging the portion of the decision which deducted the pension benefits he had received from the back pay award. Subsequently, we granted the City's motion to dismiss the appeal, but allowed Foss' cross-appeal to stand.

OPINION

I

Initially, the City contends that this court lacks jurisdiction to hear Foss' cross-appeal since no appeal is pending. Cross-appeals are governed by Supreme Court Rule 303(a)(3) (134 Ill. 2d R. 303(a)(3)), which provides:

> "If a timely notice of appeal is filed and served by a party, any

other party, within 10 days after service upon him, or within 30 days of the entry of the order disposing of the last pending post-trial motion, whichever is later, may join in the appeal, appeal separately, or cross-appeal by filing a notice of appeal, indicating which type of appeal is being taken."

■ The time for appealing a decision of the Human Rights Commission is 35 days. (775 ILCS 5/8—111 (West 1992); *City of Benton Police Department v. Human Rights Comm'n* (1986), 147 Ill. App. 3d 7.) The Commission's final order was entered on June 29, 1992, and the City filed a petition for review on July 31, 1992, which was within 35 days of the Commission's order. Once the City's timely notice of appeal was filed, Foss had 10 days to file a notice of cross-appeal pursuant to Supreme Court Rule 303(a)(3). Foss did so on August 10, 1992, and this court's jurisdiction over Foss' cross-appeal vested at that time. See *Greco v. Coleman* (1988), 176 Ill. App. 3d 394; 6 C. Nichols, Illinois Civil Practice § 6149, at 159 (rev. ed. 1993).

The City maintains, however, that this court lost jurisdiction over the cross-appeal when the City dismissed its original appeal. We cannot agree. There is nothing in the language of Rule 303 which could support such a conclusion. Furthermore, the one case relied upon by the City (*Benton*, 147 Ill. App. 3d 7) clearly does not support the City's position; indeed, the issue before us did not arise in that case.

In *Benton*, the city sought review of an order issued by the Human Rights Commission by filing a petition for review 35 days after the date of the Commission's final decision. The same day, the complainant filed a counterpetition for review of those portions of the administrative decision not in his favor. The Commission moved to dismiss both petitions for review as untimely, arguing that the 30-day time limit set forth in Supreme Court Rule 303(a)(1) should apply. The complainant adopted the Commission's position that the City of Benton's appeal was untimely, but with respect to his own appeal, the complainant argued that it was timely under the provisions of Rule 303(a)(3) as in the nature of a cross-appeal. Unsurprisingly, the appellate court observed that the timeliness of the cross-appellant's appeal was dependant on the timeliness of the original appeal: "If there is no *timely* appeal petition pending by the City of Benton, then logically [complainant] could not be in the position of a cross-petitioner and could not rely on Supreme Court Rule 303(a)(3)." (Emphasis added.) (*Benton*, 147 Ill. App. 3d at 10.) The court then concluded that the original appeal was timely under section 8—111 of the Human Rights Act, which provides a 35-day time limit, and that the cross-appeal was also timely. *Benton* did not address the sit-

uation at bar where a timely appeal was filed and then dismissed after a cross-appeal was filed.

In the case at bar, it is undisputed that the City filed a timely notice of appeal and Foss filed a timely notice of cross-appeal 10 days later. As we observed earlier, the filing of a timely notice of cross-appeal is jurisdictional. (See *Greco v. Coleman* (1988), 176 Ill. App. 3d 394; 6 C. Nichols, Illinois Civil Practice § 6149, at 159 (rev. ed. 1993).) The fact that the City later moved to dismiss its appeal has no bearing on this court's jurisdiction to hear the cross-appeal. We turn now to the merits of Foss' cross-appeal.

## II

Foss challenges the portion of the Commission's decision which offset the disability pension benefits he had previously received against the award of back pay. The amount of damages awarded to a prevailing complainant under the Human Rights Act must be affirmed on review absent an abuse of discretion. (*R.R. Donnelley & Sons Co. v. Human Rights Comm'n* (1991), 219 Ill. App. 3d 789, 795; *Illinois v. Human Rights Comm'n* (1989), 178 Ill. App. 3d 1033, 1053; *Loyola University v. Human Rights Comm'n* (1986), 149 Ill. App. 3d 8, 22.) Foss maintains that the Commission did abuse its discretion by deducting the disability pension benefits he had received because those benefits were collateral source payments and, therefore, could not be deducted.

■ Under the collateral source rule, the amount of damages a plaintiff is entitled to in a civil action will not be decreased by the amount of benefits the plaintiff received from a source wholly independent and collateral to the wrongdoer. (*Boden v. Crawford* (1990), 196 Ill. App. 3d 71, 76.) In discrimination cases, funds supported in part, but not entirely, by contributions from a defendant, such as unemployment compensation and social security disability benefits, are generally considered collateral as well. (See, *e.g.*, *National Labor Relations Board v. Gullett Gin Co.* (1951), 340 U.S. 361, 364, 95 L. Ed. 337, 342, 71 S. Ct. 337, 339; *EEOC v. O'Grady* (7th Cir. 1988), 857 F.2d 383.) However, there does not seem to be a clear consensus on the issue of whether pension and/or disability benefits fall within the collateral source rule. Rather, the result appears to be determined on a case-by-case basis. (Compare *O'Grady*, 857 F.2d 383, and *Jirus v. City of Berwyn* (N.D. Ill. 1989), 712 F. Supp. 672, with *Guthrie v. J.C. Penney Co.* (5th Cir. 1986), 803 F.2d 202; *Smith v. Office of Personnel Management* (5th Cir. 1985), 778 F.2d 258.) It *is* well settled, however, that even in cases where benefits are deemed collateral, the trial court has the discretion to deduct or not deduct them from a back

pay award. (See *O'Grady*, 857 F.2d at 390; *Smith*, 778 F.2d at 263; *Orzel v. City of Wauwatosa Fire Department* (7th Cir. 1983), 697 F.2d 743, 756.) Therein lies the flaw in Foss' argument.

Arguably, the disability benefits in this case were collateral since both the City and its employees contributed to the annuity fund. (See 40 ILCS 5/6—165 through 6—173 (West 1992).) Contrary to Foss' argument, however, a determination that benefits are "collateral" does not mean that such benefits can *never* be deducted from damages received on account of discrimination. Instead, the decision lies within the sound discretion of the trial court or, in this case, the Human Rights Commission.

■ In the case before us, the Commission concluded that the purpose of the Human Rights Act would not be served by allowing Foss to retain both disability pension benefits and the full back pay award. Under section 8A—104 of the Human Rights Act, the Commission has the discretion to enter any order which will make the complainant whole. (See 775 ILCS 5/8a—104 (West 1992).) The Commission determined that under the Human Rights Act, the remedy afforded to Foss should place him in the position he would have been in had the City not violated the Act, and not in a better financial position than he would have been in if no discrimination had occurred. We cannot say that the Commission's interpretation of the Human Rights Act is erroneous. Nor can we say that the Commission abused its discretion in deducting the disability pension benefits in this case.

Furthermore, the case of *Laird v. Illinois Central Gulf R.R. Co.* (1991), 208 Ill. App. 3d 51, which was heavily relied on by Foss, does not alter our conclusion. In *Laird*, the plaintiff was awarded damages under the Federal Employer's Liability Act (FELA) (45 U.S.C. § 51 *et seq.* (1976)) for personal injuries suffered during the course of his employment with the defendant, Central Gulf Railroad Company. On appeal, the defendant argued that the trial court erred in refusing to admit evidence of the disability annuity payments made to plaintiff. The appellate court concluded that these payments were collateral source payments and, therefore, the trial court did not err in disallowing evidence of these payments. (*Laird*, 208 Ill. App. 3d at 71.) The appellate court relied primarily on the Supreme Court's decision in *Eichel v. New York Central R.R. Co.* (1963), 375 U.S. 253, 11 L. Ed. 2d 307, 84 S. Ct. 316, which recognized that disability payments received under the Railroad Retirement Act (45 U.S.C. § 231 *et seq.* (1976)) could not be considered in mitigation of damages awarded under FELA for injuries caused by the employer. However, the holding of *Laird* cannot be interpreted as establishing a requirement

that collateral source payments may never be deducted from damage awards in *discrimination cases*. Rather, in our view, the holding of *Laird* is confined to cases involving injuries that come within FELA. Our conclusion is supported by the following comment from the *Laird* court:

> "While defendant also notes that a number of States have abrogated the collateral source rule in various types of civil litigation and both Federal and State courts have become increasingly critical of the collateral source rule, defendant has not brought to our attention any FELA cases which distinguish the holding of the Supreme Court in *Eichel.*" *Laird*, 208 Ill. App. 3d at 70.

As we observed above, the Commission has broad discretion to fashion a remedy which will make a complainant whole. Nothing in the Human Rights Act precludes the Commission from offsetting disability benefits, even if they are received from a collateral source. We find no abuse of the Commission's discretion in this case.

For the foregoing reasons, the judgment of the Commission is affirmed.

Affirmed.

GORDON and McNULTY, JJ., concur.