# Illinois Official Reports

## Appellate Court

<div style="border:1px solid black">

### *MIFAB, Inc. v. Illinois Human Rights Comm'n*, 2020 IL App (1st) 181098

</div>

| | |
|---|---|
| Appellate Court Caption | MIFAB, INC., Petitioner, v. THE ILLINOIS HUMAN RIGHTS COMMISSION and CLINT TOWERS, Respondents. |
| District & No. | First District, Fifth Division<br>No. 1-18-1098 |
| Filed | May 1, 2020 |
| Decision Under Review | Petition for review of order of Illinois Human Rights Commission, No. 07-CF-1361. |
| Judgment | Affirmed. |
| Counsel on Appeal | John L. Leonard, of Teeple Leonard & Erdman, and Patrick E. Dwyer III, of Dwyer & Coogan, P.C., both of Chicago, and Richard F. Loritz, of Loritz & Associates, Ltd., of Orland Park, for petitioner.<br><br>Kwame Raoul, Attorney General, of Chicago (Benjamin F. Jacobson, Assistant Attorney General, of counsel), for respondent Illinois Human Rights Commission.<br><br>Matthew P. Weems, of Chicago, for other respondent. |

JUSTICE HALL delivered the judgment of the court, with opinion. Presiding Justice Hoffman and Justice Rochford concurred in the judgment and opinion.

**OPINION**

¶ 1    Petitioner, MIFAB, Inc. (MIFAB), seeks direct administrative review of a default order entered against it by the Illinois Human Rights Commission (Commission) on Clint Towers's charge of race and national origin discrimination. Petitioner also contests the Commission's order awarding Towers damages for back pay, emotional distress, and attorney fees. For the following reasons, we affirm the Commission's decision.

¶ 2                                    BACKGROUND

¶ 3    Petitioner, a plumbing supply business, moved its operations to Chicago from Toronto, Ontario, Canada, in mid-June 2006. Towers was hired as a full-time employee later that month to work in the warehouse of the newly opened Chicago plant. He also worked overtime, but those hours began to decrease in September 2006. On November 7, 2006, petitioner fired Towers.

¶ 4    On November 14, 2006, Towers filed a charge of race and national origin discrimination against petitioner with the Illinois Department of Human Rights (Department), alleging that he was paid less than his Hispanic coworkers, denied overtime, and unlawfully terminated.

¶ 5    In early October of 2008, Towers filed a complaint with the Commission. However, the record on appeal does not provide any indication of what transpired between December 2006 and October 2008, when Towers filed his complaint with the Commission.

¶ 6    During a subsequent case management conference on March 10, 2009, the administrative law judge (ALJ) ordered the parties to initiate discovery by April 24, 2009. On June 9, 2009, the ALJ ordered petitioner to initiate discovery and Towers to supplement discovery by July 10, 2009. In August of 2009, once again, the parties were ordered to complete discovery by September 16, 2009, and appear at the next status hearing on September 23. Petitioner did not appear at the next status hearing and did not complete discovery, and Towers was granted leave to file a motion to compel. In his motion, Towers asserted that petitioner refused to provide adequate and complete responses to his discovery requests.

¶ 7    In October of 2009, during the hearing on the motion to compel, the ALJ ordered the parties to confer and agree, in writing, upon outstanding discovery issues and serve answers by November 30, 2009. Petitioner did not do so. Once again, on April 7, 2010, the ALJ ordered petitioner to answer outstanding discovery by May 7, 2010. She also ordered the parties to engage in a Rule 201(k) conference (Ill. S. Ct. R. 201(k) (eff. July 1, 2014) and file a statement if issues remained; ordered Towers to file a revised motion to compel by May 27, 2010, if necessary; and ordered the parties to communicate in a timely, respectful, and civil fashion to avoid unnecessarily protracted proceedings.

¶ 8    On June 10, 2010, the ALJ ordered the parties to engage in another Rule 201(k) conference and ordered petitioner to respond to Towers's motion to compel. Although Towers responded to petitioner's motion to compel in a timely manner, petitioner did not file a response to

Towers's motion to compel. On September 29, 2010, at the hearing on the parties' motions to compel, the ALJ ordered both parties to file revised motions by November 5, 2010. Towers filed a timely motion; however, petitioner filed its motion three days late.

¶ 9    On December 14, 2010, for the second time petitioner failed to appear at a scheduled hearing, and the ALJ ordered petitioner to file a response to Towers's two motions to compel and his motion to strike petitioner's discovery responses by January 2, 2011.

¶ 10    During a status hearing on January 26, 2011, petitioner was ordered to submit complete responses to Towers's second motion to compel discovery responses. Petitioner was also ordered to file a certificate of service of its responses with the Commission no later than February 3, 2011, and prepare courtesy copies of all its responses and bring them to the next status hearing. The ALJ ordered Towers to file an amended complaint to reflect a plain and concise statement of the cause of action and file a certificate of service that he served supplemental answers to petitioner's discovery. Finally, the order also provided that failure to comply would likely result in sanctions.

¶ 11    On February 7, 2011, Towers filed his first amended complaint, which the ALJ struck and granted him leave to file a second amended complaint. The ALJ also ordered petitioner to answer the second amended complaint and ordered the parties to appear at the next status hearing on April 12, 2011. The record indicates that petitioner did not answer Towers's second amended complaint.

¶ 12    On April 12, 2011, for the third time, petitioner failed to appear at a status hearing. During the hearing, Towers represented that petitioner's discovery responses were still incomplete, and he allowed the ALJ to review the documents petitioner had produced. Towers also moved for sanctions against petitioner. Presented with Towers's motion for sanctions, the ALJ noted that she had recalled the case to allow sufficient opportunity for petitioner to appear and that petitioner had yet to comply with her January 26, 2011, order to provide courtesy copies of its discovery responses for her review. The ALJ reasoned that section 5300.750(e) of Title 56 of the Illinois Administrative Code (Code) (56 Ill. Adm. Code 5300.750(e) (1998)) authorized sanctions as justice may require, including a recommendation for default where a party fails to appear at a scheduled hearing without requesting a continuance reasonably in advance, unreasonably refuses to comply with any order entered, or otherwise engages in conduct which unreasonably delays or protracts these proceedings. As such, the ALJ determined that petitioner's conduct caused unreasonable delay and warranted sanctions and ordered petitioner to pay Towers's attorney fees for preparation and attendance at the hearing.

¶ 13    The ALJ also ordered petitioner to file a verified answer to Towers's second amended complaint by April 22, 2011. Finally, the ALJ ordered petitioner to comply with the January 26, 2011, order or face the possibility of sanctions, including default judgment.

¶ 14    On May 4, 2011, Towers filed a motion for default against petitioner, asserting that it still had not provided complete responses to his supplemental discovery. On May 9, 2011, petitioner filed its answer to Towers's second amended complaint 17 days late. It also filed its responses to Towers's supplemental interrogatories on May 10 and filed courtesy copies with the ALJ on May 11.

¶ 15    In her May 11 order, the ALJ noted that petitioner had, once again, failed to comply with her orders; namely, petitioner failed to serve its responses to Towers's supplemental interrogatories in a timely manner but served them 18 days late. Petitioner also served no additional production responses as ordered. The ALJ also noted that on two occasions

petitioner failed to file courtesy copies with certificates of service to the Commission in a timely manner. The ALJ ordered petitioner to file an answer to Towers's motion for default by May 27, scheduled a hearing on the motion, and encouraged the parties to discuss settlement. On May 17, 2011, petitioner finally produced approximately 400 documents to Towers.

¶ 16      On June 21, 2011, during the hearing on Towers's motion for default, the ALJ noted that, after she had already assessed sanctions, petitioner still failed to comply with her orders and had not presented a good faith reason for its conduct. The ALJ determined that petitioner had engaged in conduct that warranted a sanction of default pursuant to section 5300.750(e) of Title 56 of the Code which provides:

> "Should a Party fail to appear at a scheduled hearing without requesting a continuance reasonably in advance, or unreasonably refuse to comply with any Order entered under this Part, or otherwise engage in conduct which unreasonably delays or protracts proceedings, the Administrative Law Judge may file a recommendation of dismissal with prejudice or default or other appropriate Order imposing sanctions as justice may require, including requiring the offending Party or attorney to pay the reasonable expenses and attorney's fees incurred by any other Party as a result of the misconduct. In a case proceeding under the alternative hearing procedure, the Administrative Law Judge may issue a Final Order containing any sanction for unreasonable conduct which the Commission may impose under this Section." *Id.*

Therefore, the ALJ recommended a default against petitioner on the issue of liability for engaging in conduct that unreasonably delayed the proceedings, and a hearing on damages was scheduled. Petitioner subsequently filed a motion to reconsider the ALJ's recommendation of default, which was denied.

¶ 17      On December 6 and 7, 2011, during the damages hearing, petitioner renewed its motion to reconsider the ALJ's recommendation of default, which was, once again, denied. Towers testified during the hearing that, when he began working at MIFAB, he earned $14 per hour for regular pay and $21 per hour for overtime pay. He also received compliments regarding his hard work. Towers testified that in mid-August 2006, during a meeting held with the black employees, his supervisor informed them that the company would be reducing overtime. In early September, the supervisor had another meeting with the employees, including non-black employees, and informed them that overtime was a privilege.

¶ 18      On November 7, 2006, Towers was fired and began looking for other employment the following week. He testified that between November 2006 and April 2007, he applied for positions both in person and via the Internet. Between April 2007 and October 2010, he applied for approximately 250 positions via the Internet, and he also searched for positions in newspapers and through referrals. Documentation evidencing the positions for which he applied was presented to the ALJ. He also testified that his computer had a virus that destroyed some of his Internet searches during this period. Towers further testified that he applied for a variety of positions, including warehousing positions. He ceased his job search in August of 2011. Towers testified that, after he was terminated, he received unemployment compensation until late 2009.

¶ 19      Towers testified that this experience changed his life dramatically and made him feel worthless, overlooked, and belittled even though he thought he was doing a superb job and "tried to go above and beyond what was asked." He lost sleep, experienced family issues, lost

his savings, amassed debt, and was unable to complete a purchase on a home. He also sought psychiatric help in 2007 and 2008 and was told that he was suffering from depression.

¶ 20   Towers also testified that he did not accept the position petitioner offered after he was terminated because his hourly compensation would have decreased from $14 per hour to $9 per hour, he was only allowed one month to accept, and the new position was more than an hour away from his home.

¶ 21   Petitioner presented a former general manager-employee, Peter Logan, as a mitigation witness. Logan testified that he supervised Towers and all warehouse, inventory control, customer service, quality control, and purchasing employees. Logan stated that Towers was always nice and polite and did his job well. Towers's counsel objected to the introduction of Logan's testimony, stating that he was not a human resources (HR) professional and did not have the requisite experience to testify regarding whether Towers was qualified for other positions he was applying for. The ALJ agreed with Towers and reasoned that a foundation had not been established that Logan was an HR expert and that Logan was not qualified to testify regarding Towers's qualifications for other positions.

¶ 22   Additional evidence was introduced that Hispanic warehouse workers, employed during the same time period that Towers was employed, were paid at a higher hourly rate of $16 and $17 per hour for regular pay and $24 and $25.50 for overtime pay, compared to Towers's regular hourly rate of $14 per hour and overtime hourly rate of $21 per hour. Also, between August and November 2006, Towers's overtime decreased to as low as 0.5 hours, while his Hispanic counterparts maintained steady overtime ranging from 3.5 to 46.5 hours.

¶ 23   At the close of the damages hearing, Towers filed an attorney fees petition. Petitioner objected.

¶ 24   On August 29, 2012, the ALJ issued a recommended order and decision (ROD). In its ROD, the ALJ maintained that a default against petitioner was warranted on the issue of liability. On the issue of damages, the ALJ reasoned that Towers presented credible testimony and evidence of his compensation. The ALJ noted that Towers's refusal to accept MIFAB's employment offer after he was terminated was reasonable because the pay he received prior to termination, $14 per hour, would decrease to $9 per hour, it had to be accepted within one month, and the distance he would have to travel to work would increase. In addition, the ALJ determined that petitioner's argument that Towers's job search efforts were "sporadic and half-hearted" was not supported by the record. As such, she also recommended that Towers receive damages for back wages, emotional distress, reasonable attorney fees, and costs.

¶ 25   Comparing the Hispanic coworkers' regular hourly pay of $16 per hour to Towers's regular hourly pay of $14 per hour, the ALJ determined that Towers's was entitled to $1,199 in damages for regular back pay from August 2006 until November 6, 2006, and $130,560 in damages for regular back pay from his date of discharge until October 6, 2010. In addition, comparing the Hispanic coworkers' overtime hourly pay of $24 per hour to Towers's overtime hourly pay of $21 per hour, the ALJ determined that Towers was entitled to $315.75 in damages for overtime back pay, and $2,178 for missed overtime back pay from August 2006 until November 6, 2006. Towers was also entitled to $48,960 in missed overtime back pay from his date of discharge until October 6, 2010. She concluded that Towers was entitled to a total of $183,212.75 in back pay compensation, minus an offset of $19,439 for unemployment insurance benefits he previously received.

¶ 26 Towers was also awarded damages for emotional distress in the amount of $10,000, and for attorney fees at a rate of $200 per hour, for a total amount of $36,150.

¶ 27 Both Towers and petitioner filed exceptions to the ALJ's ROD with the Commission.[1] Petitioner took exception to the entry of default and the award of damages against it.

¶ 28 On September 24, 2015, the Commission adopted the ALJ's ROD. On May 1, 2018, the Commission denied petitioner's application for rehearing.

¶ 29 On June 4, 2018, petitioner filed a timely petition for review to this court pursuant to section 8-111(B)(1) of the Illinois Human Rights Act (Act) (775 ILCS 5/8-111(B)(1) (West 2018)), naming Towers and the Commission as respondents. On appeal, petitioner contends that (1) the Commission erred by adopting the ALJ's recommendation to enter default against petitioner on the issue of liability; (2) the Commission erred by adopting the ALJ's recommendation to (a) strike the testimony of petitioner's mitigation witness, (b) awarding Towers's attorney fees at a rate of $200 per hour, and (c) awarding damages to Towers for emotional distress; and (3) it was denied its right to due process.

¶ 30                               ANALYSIS
¶ 31                A. Violations of Illinois Supreme Court Rule 341
¶ 32 As an initial matter, respondents ask that we disregard portions of petitioner's brief on appeal for failure to comply with Illinois Supreme Court Rule 341(h)(6) (eff. May 25, 2018) because it is incomplete, fails to provide facts relevant to the first two years after Towers's complaint was filed, is argumentative, and is inaccurate.

¶ 33 We agree that Rule 341(h)(6) requires a brief statement of facts to be "stated accurately and fairly without argument or comment, and with appropriate reference to the pages of the record on appeal." *Id.* However, whether to dismiss this appeal due to violations of Rule 341(h)(6) is a matter within our discretion. See *Lamb-Rosenfeldt v. Burke Medical Group, Ltd.*, 2012 IL App (1st) 101558, ¶ 21. As petitioner's violations do not hinder our review, we will not strike the statement of facts. *McMackin v. Weberpal Roofing, Inc.*, 2011 IL App (2d) 100461, ¶ 3. However, we admonish counsel to carefully adhere to the requirements of the supreme court rules in future appeals.

¶ 34 Respondents also mention the incompleteness of the record on appeal as there are no record of proceedings between December 2006 and October 2008. Although this will not hinder our review, we will also resolve any doubts that may arise due to the incompleteness of the record against petitioner. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 392 (1984).

¶ 35                              B. Default Judgment
¶ 36 Petitioner filed its petition for review pursuant to section 8-111(B)(1) of the Act. 775 ILCS 5/8-111(B)(1) (West 2018). As such, this court reviews the decision of the Commission, not the Department. See *Zaderaka v. Illinois Human Rights Comm'n*, 131 Ill. 2d 172, 180 (1989).

¶ 37 Prior to addressing petitioner's argument regarding the entry of default against it, we must first address its contention that we should not consider anything prior to January 2011 because the ALJ's recommendation order does not specifically state that petitioner violated any orders prior to that date. This argument is meritless.

---

[1]Towers's exceptions are not a part of this appeal.

¶ 38     This court is empowered to review all questions of fact and law presented by the entire record regardless of the actual findings and rulings of the agency below. *Material Service Corp. v. Department of Revenue*, 98 Ill. 2d 382, 387 (1983); *Smith v. Chicago Board of Education*, 176 Ill. App. 3d 109, 113 (1988).

¶ 39     In addition, Towers's motion for default addressed petitioner's conduct throughout the proceedings not just those proceedings that occurred post-January 2011. Towers argued that throughout the proceedings, petitioner caused unreasonable delay by failing to attend status conferences, came to court unprepared, and sent other attorneys to court with no knowledge of the matter. He also asserted that petitioner failed to produce relevant documents or answer interrogatories and failed to comply with the ALJ's orders "from [the] second to [the] last status date." Therefore, we will review the Commission's decision based upon the entire record on appeal.

¶ 40     Turning to the issue of default, the Commission's findings of fact will be sustained unless this court concludes that they are against the manifest weight of the evidence. *Raintree Health Care Center v. Illinois Human Rights Comm'n*, 173 Ill. 2d 469, 479 (1996) (plurality opinion). An administrative agency's findings are against the manifest weight of the evidence if the opposite conclusion is clearly evident. *Speed District 802 v. Warning*, 242 Ill. 2d 92, 137 (2011) (Freeman, J., dissenting, joined by Theis, J.).

¶ 41     In addition, we review the Commission's decision to adopt the ALJ's recommendation to enter a default as a sanction against petitioner under an abuse of discretion standard. *Tolliver v. Housing Authority*, 2017 IL App (1st) 153615, ¶ 37 (citing *Sonntag v. Stewart*, 2015 IL App (2d) 140445, ¶ 19). " 'A sanction will be found to be an abuse of discretion if it is arbitrary and capricious, or if the sanction is overly harsh in view of the mitigating circumstances.' " *Id.* (quoting *Kazmi v. Department of Financial & Professional Regulation*, 2014 IL App (1st) 130959, ¶ 21).

¶ 42     On appeal, petitioner contends that the entry of default as a sanction was improper because it did not violate any of the ALJ's discovery orders as of February 8, 2011; it was not in default of any ALJ orders; and its conduct did not show a deliberate, contumacious, and unwarranted disregard for the ALJ's authority. In addition, petitioner contends the ALJ's recommendation of default was not expressly permitted by the Code. After considering the record in light of the aforementioned principles, we find that the Code expressly authorized the ALJ to recommend default as a sanction in this case. Further, petitioner's actions throughout the proceedings caused unreasonable delay and protracted the proceedings.

¶ 43     Section 5300.750(e) of Title 56 of the Code, which addresses sanctions, and section 5300.720 (56 Ill. Adm. Code 5300.720 (2010)), which addresses discovery, are delineated under the same part of the Code entitled, "PART 5300 PROCEDURAL RULES" (56 Ill. Adm. Code 5300 (2010)). Section 5300.750(e) is clear that if a party unreasonably refuses to comply with "any Order entered under this Part" or otherwise engages in conduct that unreasonably delays or protracts proceedings, the ALJ may enter a default against that party. 56 Ill. Adm. Code 5300.750(e) (1998). The discovery orders in this case were entered under part 5300 of Title 56 of the Code, including orders related to discovery as set forth in section 5300.720. Therefore, petitioner's contention that the Code did not expressly authorize a sanction of default is incorrect and completely misreads the Code.

¶ 44     In addition, a sanction of default in this case was supported by the record where petitioner repeatedly failed to comply with deadlines and missed hearings without any requests for a

continuance. The record reflects that, during the proceedings, petitioner failed to appear at a scheduled status hearing three times: September 23, 2009, December 14, 2009, and April 12, 2011. In addition, petitioner was sanctioned for failing to appear at the April 12 hearing and ordered to pay opposing counsel's attorney fees. Petitioner also missed 15 deadlines set by the ALJ, failed to answer discovery in a timely manner, and failed to file courtesy copies as required by the ALJ. The record also reflects that the parties were admonished on at least two occasions that failure to comply with the ALJ's orders could result in default as a sanction.

¶ 45    Based upon the foregoing, we find that the Commission's findings of fact were not against the manifest weight of the evidence and its decision to adopt the ALJ's recommendation to enter default against petitioner as a sanction was not an abuse of its discretion.

¶ 46    Petitioner further contends that pursuant to Illinois Supreme Court Rule 219(c) (eff. July 1, 2002) the facts of this case do not support an order of default.

¶ 47    Although we believe that the Code expressly authorized the Commission to enter a default against petitioner, if we were to apply Rule 219(c) to the facts of this case, we would still find that the Commission did not err by entering default against petitioner because its conduct showed a deliberate, contumacious, or unwarranted disregard for the ALJ's authority. See *Shimanovsky v. General Motors Corp.*, 181 Ill. 2d 112, 123 (1998); *Chicago Transit Authority v. Department of Human Rights*, 169 Ill. App. 3d 749, 754 (1988).

¶ 48    As previously stated herein, the record indicates that petitioner failed to file a timely answer to Towers's original and amended complaints, failed to comply with ALJ orders, including discovery orders, failed to appear at status hearings, received a sanction for failing to appear at a status hearing, and failed to provide courtesy copies when directed to do so by the ALJ. In addition, petitioner failed to comply with the ALJ's order to provide courtesy copies of the discovery in a timely manner and provided no good faith reason for its conduct.

¶ 49    Petitioner's reliance on *Cronin v. Kottke Associates, LLC*, 2012 IL App (1st) 111632, *Denny's, Inc. v. Department of Human Rights*, 363 Ill. App. 3d 1 (2005), and *Federenko v. Builders Plumbing Supplies, Inc.*, 123 Ill. App. 2d 129 (1970), in support of its position that an order of default was improper is misplaced. In *Cronin*, plaintiff violated two court orders to timely file exhibits and file a pretrial memorandum within one week. *Cronin*, 2012 IL App (1st) 111632. Unlike the facts in this case, where petitioner repeatedly ignored deadlines and failed to appear at prescheduled hearings on three occasions, the appellate court in *Cronin* noted that although plaintiff's counsel's decisions may have been misguided and his trial preparation may have been inadequate, it was not, however, a blatant and complete disregard for the court's authority warranting dismissal and his conduct was not contumacious or a deliberate refusal to comply with the court's procedures. *Id.* ¶ 49. The *Cronin* court also noted that the plaintiff in that case had not exhibited a pattern of repeated misconduct, had not violated any discovery orders, and did not receive any prior reprimand by the court. *Id.* ¶¶ 54-56.

¶ 50    The facts in *Denny's, Inc.*, are equally distinguishable from the facts in this case. Unlike petitioner's failure to appear at status hearings in this case, in *Denny's, Inc.*, plaintiff only missed one fact-finding conference which resulted in default. *Denny's, Inc.*, 363 Ill. App. 3d at 8. Therefore, the *Denny's, Inc.*, court reversed and held that plaintiff's conduct did not amount to deliberate, contumacious, and unwarranted disregard for the Department's authority. *Id.* at 12-13.

¶ 51    In *Federenko*, plaintiff was defaulted for failing to appear three times within a month; however, the appellate court determined that a sanction of default was a "harsh punishment." *Federenko*, 123 Ill. App. 2d 129. Unlike the facts in *Federenko*, in this case, petitioner's conduct of failing to comply with court orders and failing to appear spanned over a period of approximately two years. Further, just two months prior to the sanction of default, petitioner was sanctioned for failing to appear at an April 12, 2011, hearing and was required to pay Towers's attorney fees.

¶ 52    We find the facts in *Cronin*, *Denny's, Inc.*, and *Federenko*, inapposite to the facts in this case where petitioner failed to follow the ALJ's orders throughout the proceedings.

¶ 53    Petitioner's repeated attempts to minimize the impact of its conduct throughout the proceedings are troubling. Its contentions that Towers employs a rather loose definition of what constitutes a "missed deadline" and that a prior sanction to pay Towers's attorney fees was somehow "over and done with" are at odds with the law. We are "empowered to review all questions of fact and law presented by the entire record." *Smith*, 176 Ill. App. 3d at 113. Petitioner cannot choose what part of the proceedings is subject to our review on appeal.

¶ 54    Therefore, we find the Commission's default order entered against the petitioner was supported by the record.

¶ 55                              C. Damages Hearing
¶ 56                        1. Petitioner's Mitigation Witness
¶ 57    Petitioner contends that the Commission erred by adopting the ALJ's recommendation to exclude the testimony of its mitigation witness, Logan. Petitioner contends that, as Towers's former supervisor, Logan was familiar with Towers's experience and was uniquely competent to testify regarding Towers's qualifications. It also contends that Logan should have been allowed to testify on a job-by-job basis with objections being made if necessary.

¶ 58    An administrative agency's decision regarding the admission of evidence and testimony is reviewed for an abuse of discretion. *Danigeles v. Illinois Department of Financial & Professional Regulation*, 2015 IL App (1st) 142622, ¶ 82. On administrative review, we will not reweigh the evidence or the determination of the credibility of the witnesses, which is to be made by the agency. *Gernaga v. City of Chicago*, 2015 IL App (1st) 130272, ¶ 13. The mere fact that a conclusion opposite to the one reached by the agency is reasonable or that the reviewing court might have ruled differently will not justify the reversal of administrative findings. *Id.* (citing *Terrano v. Retirement Board of the Policemen's Annuity & Benefit Fund*, 315 Ill. App. 3d 270, 274 (2000)). If the record contains competent evidence to support the agency's decision, it should be affirmed. *Terrano*, 315 Ill. App. 3d at 274; *O'Neill v. Rodriguez*, 298 Ill. App. 3d 897, 903 (1998). With these principles in mind, we find no abuse of discretion here.

¶ 59    Although Logan testified that he supervised Towers and was familiar with his duties and responsibilities while employed with petitioner, the record is devoid of any indication that petitioner established the necessary foundation for the admission of Logan's testimony. It was never established that Logan had any experience or expertise in HR related matters not common to a layperson or that he had the requisite knowledge to testify about whether Towers was qualified for any other positions. Therefore, we agree with the ALJ's determination that

petitioner did not establish "an appropriate foundation for this witness to testify as to whether Complainant is qualified for third-party jobs of which this witness is totally unfamiliar with."

¶ 60 Furthermore, petitioner's reliance on *Thompson v. Gordon*, 221 Ill. 2d 414 (2006), in support of its contention that "a layperson who, by virtue of his employment history" is competent to testify as an expert witness, contorts the reasoning of that case. The *Thompson* court reasoned that, "[a] person will be allowed to testify as an expert if his experience and qualifications afford him knowledge that is not common to laypersons, and where his testimony will aid the trier of fact in reaching its conclusions." *Id.* at 428. Once again, there is nothing in the record to support the conclusion that Logan's experience as Towers's supervisor afforded him knowledge above that of a layperson. We therefore affirm the Commission's decision to disallow Logan's testimony.

¶ 61                                   2. Damages Award

¶ 62 Petitioner contends that the Commission erred by awarding Towers damages for back pay and that this award was excessive. It also contends that the Commission erred by awarding damages for attorney fees, and emotional distress. Finally, petitioner contends that Towers failed to mitigate his damages. Based upon the following, we disagree with petitioner's contentions.

¶ 63 The amount of damages awarded to a prevailing claimant by the Commission will not be disturbed on review absent an abuse of discretion. *Windsor Clothing Store v. Castro*, 2015 IL App (1st) 142999, ¶¶ 48-49 (citing *City of Chicago v. Human Rights Comm'n*, 264 Ill. App. 3d 982, 987 (1994)). Under this standard, the Commission's award will not be disturbed unless it is arbitrary or capricious, or unless no reasonable person would agree with the Commission's position. *Id.* (citing *Young v. Illinois Human Rights Comm'n*, 2012 IL App (1st) 112204, ¶ 33). In determining whether there has been an abuse of discretion, this court may not substitute its judgment for that of the agency, or even determine whether the agency exercised its discretion wisely. *Simmons v. Garces*, 198 Ill. 2d 541, 568 (2002).

¶ 64 In this case, the record reflects that, prior to recommending an award for damages, the ALJ listened to Towers's testimony and determined that his testimony was credible and established evidence of his compensation. In addition to Towers's testimony, she also weighed other evidence presented that established that the Hispanic employees were earning more wages and overtime pay than Towers.

¶ 65 With regard to regular back pay, the ALJ determined that the evidence established that there was a $2 per hour difference between Towers's regular pay and his Hispanic coworkers' regular pay. Using the $2 per hour difference, the ALJ determined that Towers was entitled to $1199 in regular back pay from August 2006 until November 6, 2006, and $130,560 in regular back pay from his date of discharge until October 6, 2010.

¶ 66 The ALJ also determined that the evidence established that there was a $3 per hour difference between Towers's overtime pay and his Hispanic coworkers' overtime pay, which entitled Towers to $315.75 in overtime back pay and $2178 in missed overtime back pay between August and November 6, 2006. Towers was also entitled to $48,960 in overtime back pay from his date of discharge to October 2010. As such, the ALJ recommended a total award of $183,212.75 in back pay for regular and overtime pay, minus any unemployment compensation Towers had received.

- 10 -

¶ 67 As the issue of liability was already established, we cannot say that the Commission's award of back pay was arbitrary or capricious or that no reasonable person would agree with the Commission's position. See *Windsor Clothing Store*, 2015 IL App (1st) 142999, ¶¶ 48-49; *Young*, 2012 IL App (1st) 112204, ¶ 33. Therefore, the Commission did not abuse its discretion by awarding back pay to Towers.

¶ 68 Regarding the award of attorney fees, petitioner contends that the Commission erred when it awarded Towers attorney fees at a rate of $200 per hour because this fee was excessive.

¶ 69 Generally, we will not disturb an award of attorney fees unless the Commission has abused its discretion. *Raintree Health Care Center*, 173 Ill. 2d at 494. An abuse of discretion occurs only where no reasonable person could agree with the position taken by the Commission. *Young*, 2012 IL App (1st) 112204, ¶ 33. In addition, section 8B-104(D) of the Act allows the Commission to grant reasonable attorney fees. 775 ILCS 5/8B-104(D) (West 2018).

¶ 70 In this case, the ALJ relied on a Commission case, *Clark and Champaign National Bank*, 4 Ill. HRC Rep. 193 (July 2, 1982), which provided the guidelines for assessing attorney fees. Reviewing Towers's petition and affidavit in support thereof, the ALJ considered the attorney's experience, evidence of his fee awards in comparable employment discrimination cases, and evidence of the actual hourly rate the attorney charged. The ALJ also considered Towers's request that his attorney be paid at a rate of $300 per hour compared to petitioner's suggestion that a more appropriate rate was $150 per hour. The ALJ agreed with petitioner that the evidence presented did not support Towers's $300.00 per hour fee request but determined that $200 per hour was a more reasonable fee.

¶ 71 Therefore, we disagree with petitioner that the ALJ's determination was subjective. The ALJ considered Towers's fee petition, the experience of his attorney, other similar cases the attorney litigated, and the prevailing community rate for similar legal services. See *Godinez v. Sullivan-Lackey*, 352 Ill. App. 3d 87, 95 (2004). The ALJ determined the appropriate award and the reasonableness of attorney fees, which was well within her discretion. See *Raintree Health Care Center*, 173 Ill. 2d at 494. Therefore, we find that the Commission's award of attorney fees at a rate of $200 per hour was not an abuse of its discretion.

¶ 72 With regard to the Commission's $10,000 award to Towers for emotional distress, petitioner argues that this was in error because Towers's testimony was self-serving, uncorroborated, and unsupported. We disagree.

¶ 73 Section 8B-104(B) of the Act has been construed to include damages for "emotional harm and mental suffering." *Szkoda v. Human Rights Comm'n*, 302 Ill. App. 3d 532, 545 (1998). In addition, determinations as to the weight of evidence and the credibility of witnesses are matters within the province of the agency. *Gernaga*, 2015 IL App (1st) 130272, ¶ 13.

¶ 74 During the damages hearing, Towers testified that after he was terminated, he felt belittled and worthless and began suffering from depression. He lost all his savings and amassed debt. He testified that he now sees his future as "nothing but a sinkhole." The ALJ determined that Towers's testimony and demeanor while he was testifying indicated that petitioner's discriminatory actions had a profound effect on him. Rejecting Towers's request for $100,000 as excessive in comparison to other awards typically granted by the Commission and approved by the appellate court, the ALJ recommended an award of $10,000.

¶ 75 The record reflects that petitioner did not offer any testimony or evidence in opposition to Towers's testimony.

¶ 76 Based upon the foregoing, we cannot say that the Commission abused its discretion by awarding damages to Towers for emotional distress. The evidence presented at the hearing supports the Commission's decision; therefore, we will not substitute our judgment for that of the Commission.

¶ 77 Finally, we disagree with petitioner that Towers failed to mitigate his damages. Towers testified that he diligently attempted to find another position by submitting applications via the Internet and in person. He also presented 300 computer printouts as evidence of positions for which he applied that were similar to the position he held while working for petitioner. After hearing Towers's testimony and considering the evidence, the ALJ determined that this information was sufficient.

¶ 78 Based upon the foregoing, we find that the Commission did not abuse its discretion by awarding damages to Towers.

¶ 79                                                    D. Due Process

¶ 80 Petitioner's final contention is that it was denied its right to due process because it was not allowed a full hearing on the issue of liability.

¶ 81 The law is clear. There is no due process violation in an administrative agency proceeding where the negligence or intentional conduct of a party results in the dismissal of its claim or the entry of a default judgment against the party. *Glassworks, Inc. v. Human Rights Comm'n*, 164 Ill. App. 3d 842, 850 (1987); *Engle v. Department of Financial & Professional Regulation*, 2018 IL App (1st) 162602, ¶ 55; *Metz v. Illinois State Labor Relations Board*, 231 Ill. App. 3d 1079, 1093 (1992) (no due process violation where the respondent filed a late answer, the ALJ gave the respondent an opportunity to respond to the charging party's motion for default, and then the agency strictly enforced its regulation that the failure to file a timely answer resulted in the respondent's admission of the allegations in the complaint). Whether an administrative hearing complied with due process is a question of law and will be reviewed *de novo*. *Marconi v. Chicago Heights Police Pension Board*, 225 Ill. 2d 497, 532 (2006) (*per curiam*) (citing *Branson v. Department of Revenue*, 168 Ill. 2d 247, 254 (1995)); *Shachter v. City of Chicago*, 2016 IL App (1st) 150442, ¶ 27.

¶ 82 Similar to this case, in *Glassworks*, this court held that an employer company was not denied procedural due process in an employment discrimination case, despite the fact that there was no hearing on the merits, where a default judgment was entered against the company for the failure of its officer to attend a scheduled fact-finding meeting, and where the company was afforded an opportunity to review the propriety of the default order. See *Glassworks*, 164 Ill. App. 3d at 849. Therefore, we find no due process violations here.

¶ 83                                                     CONCLUSION

¶ 84 For the foregoing reasons, the decision of the Illinois Human Rights Commission is affirmed.

¶ 85 Affirmed.