2022 IL App (1st) 201104-U

FIRST DISTRICT
FIRST DIVISION
June 21, 2022

No. 1-20-1104

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | |
|---|---|
| JOHN E. STEWART, Jr., | ) On Petition for Direct |
| | ) Administrative Review |
| Petitioner-Appellant, | ) of an Order of the |
| | ) Illinois Human |
| | ) Rights Commission |
| v. | ) |
| | ) |
| THE ILLINOIS DEPARTMENT of | ) ALS No. 08-0252 |
| TRANSPORTATION and ILLINOIS HUMAN | ) |
| RIGHTS COMMISSION, | ) |
| | ) |
| | ) |
| Respondents-Appellees. | ) |
| | ) |

_____

JUSTICE COGHLAN delivered the judgment of the court.
Justice Pucinski concurred in the judgment.
Presiding Justice Hyman concurred in part and dissented in part.

**ORDER**

¶ 1    *Held*:  Back pay award did not make claimant "whole" because anticipated pay raises were excluded in the amount. Declining award for overtime pay and tax consequences was not an abuse of discretion.

¶ 2    On direct administrative review from an order of the Illinois Human Rights Commission (Commission), petitioner-appellant John E. Stewart, Jr. appeals the amount awarded as damages following a finding of discrimination by his employer, respondent-appellee the Illinois Department

of Transportation (IDOT). On appeal, Stewart claims that the back pay award of $269,180 failed to make him "whole" because it did not include any anticipated raises or overtime.[1] He also claims that he should have received a monetary award to compensate him for the tax consequences of receiving a lump sum amount. For the following reasons, we affirm in part, reverse in part, and remand for further proceedings to recalculate the amount of back pay to incorporate hourly pay rate increases during the discrimination period, as mandated by the Illinois Administrative Code (Code) (80 Ill. Adm. Code 310.40 (West 2006)).

¶ 3                                                    BACKGROUND

¶ 4        Because the issues on appeal are limited to the damages award, we summarily recite the background facts leading to Stewart's discrimination case.

¶ 5        On May 1, 2006, IDOT hired Stewart, a black male, as an emergency traffic patrolman (ETP). IDOT highway maintainers, including an ETP, are covered by the Teamsters Local 700 collective bargaining agreement.

¶ 6        IDOT's written "employee conduct" policy included provisions addressing "disruptive conduct" and "violence in the workplace." The "disruptive conduct" policy states: "Employees shall not engage in disruptive conduct, including but not limited to, instigating or participating in disruptive behavior, interrupting work or impeding the work effort of others." The "violence in the workplace" policy states, in relevant part, that the "use of violence or the threat of the use of violence by Department employees to subordinates, co-workers, superiors or others will not be tolerated." IDOT has a "zero tolerance" for any workplace violence, and employees must sign a form at the start of their employment acknowledging that they have read the "employee conduct"

_____

[1]In his reply brief, Stewart withdrew the issues he raised on appeal addressing interest on compensatory damages and attorney fees.

policy. When Stewart was hired, his supervisors informed him that the workplace violence policy was "zero tolerance" and he signed the acknowledgement form.

¶ 7        On December 6, 2006, Stewart used force against another ETP employee during a physical altercation at a highway accident scene. Stewart was placed on administrative leave, effective on December 7, 2006, through January 19, 2007. On January 19, 2007, IDOT suspended Stewart for 30 days pending discharge. Effective on February 14, 2007, IDOT discharged Stewart for "disruptive conduct and violence in the workplace." At the time of discharge, Stewart was earning $27 per hour.

¶ 8        On June 15, 2007, Stewart perfected his complaint with the Illinois Department of Human Rights (Department), alleging he was discharged because of his race and not for the stated reason of "disruptive conduct and violence in the workplace." Stewart claimed that "[s]imilarly situated non-black employees who have been accused of disruptive conduct and violence in the workplace were not discharged." The Department "determined there [was] substantial evidence that a civil rights violation [had] been committed" and filed a complaint with the Commission against IDOT, alleging that IDOT's "stated reason [was] pretext for unlawful discrimination."

¶ 9        On June 19, 2018, through June 21, 2018, the Commission held a public hearing. Stewart testified during the hearing and, as relevant to this appeal, summarized his employment and rate of pay earned since his discharge. Stewart also introduced into evidence as "exhibit hearing 24" (exhibit 24), a schedule prepared by IDOT containing "the salary/overtime amounts for 'all IDOT employees who were hired by IDOT in 2006 and then assigned to IDOT's ETP yard located at 35th Street and Normal Avenue in Chicago, Illinois.' " Exhibit 24 was admitted into evidence without objection.

¶ 10    On February 19, 2019, the administrative law judge (ALJ), on behalf of the Commission, issued its "recommended liability determination" (RLD). Regarding the merits of Stewart's discrimination claim, the ALJ found that he "established a *prima facie* case of race discrimination" and IDOT "did not articulate a legitimate and nondiscriminatory reason for its actions."

¶ 11    As to damages, Stewart requested $2.5 million in back pay and overtime, $500,000 for emotional distress, fringe benefits, social security contributions, a "tax consequences contribution," attorney fees, and prejudgment interest. The ALJ stated that "[w]hile the record is unclear regarding the exact amount of [Stewart's] lost wages, there is no support for an award that high." The ALJ further stated that it was "unclear how many hours [Stewart] worked per week and how many weeks he worked per year. *** Assuming he worked 40 hours per week and 50 weeks per year, [Stewart] likely earned $54,000 annually ($27.00 x 40 hours x 50 weeks = $54,000)." Using a base pay rate of $27 per hour, the ALJ concluded that Stewart was entitled to back pay wages of $269,180, plus prejudgment interest, which accounted for periods of unemployment and reduced earnings while working for other employers from the day of discharge until issuance of the RLD.[2] The ALJ also found that Stewart was entitled to $100,000 for emotional distress damages and attorney fees in the subsequently determined amount of $98,460. The ALJ further recommended that Stewart be reinstated "to a position comparable to that from which he was discharged, at the rate of pay and with the seniority and benefits, including pension benefits, he would have had if he had not been discharged in February 2007."

¶ 12    On February 28, 2019, Stewart moved for reconsideration of the $269,180 "recommended back pay award," arguing that "to make [him] whole, it would be necessary for the Court to

---

[2]Between his date of discharge and the public hearing, Stewart spent a total of six months unemployed and had earned between $14 and $18 per hour while employed. He was unemployed at the time of the public hearing.

conclude that [his] hourly rate would have inevitably increased during that twelve-year period." Stewart referenced exhibit 24, which provided the salary and overtime amounts for comparable employees in the same department and at the same location during the discrimination period. Stewart also requested an offset for "the increased tax burden [he] will incur as a result of receiving a lump sum award in this case." On March 13, 2019, the ALJ denied the motion.

¶ 13    On August 1, 2019, the ALJ entered its "recommended order and decision" (ROD), "adopting the RLD in its entirety." Stewart filed his exceptions to the ROD, reiterating his claims of error regarding the award amount, and IDOT filed its reply. On September 29, 2020, the Commission affirmed and adopted the ROD dated August 1, 2019.

¶ 14                                    ANALYSIS

¶ 15    As a preliminary matter, IDOT moved to strike, or alternatively to disregard, a portion of Stewart's reply brief, arguing that he impermissibly raised for the first time that his hourly base pay rate was negotiated with the local union and codified in section 310.40 of the Code.

¶ 16    In his response to the motion, Stewart argued that "[f]or the first time in this case, IDOT questioned its own evidence when *** it referred to Ex. 24 as 'speculation' " and that "Respondents further argued, for the first time, that 'evidence that certain selected IDOT employees receive raises from 2007–2019 does not, without more, prove that Stewart's pay would have increased at a particular rate.' " Stewart asserted that he properly "directed this court" to the negotiated and codified "Pay Schedules" set forth in the Code (80 Ill. Adm. Code 310.40 (West 2006)) because he responded "to IDOT's new attack on its own records."

¶ 17    This court entered an order directing that the motion be taken with the case. We now consider the motion, along with Stewart's response.

¶ 18        Under Illinois Supreme Court Rule 341(h)(7) (eff. Oct. 1, 2020), "[p]oints not argued are forfeited and shall not be raised in the reply brief, in oral argument, or on petition for rehearing." Rule 341(j) further provides that the reply brief "shall be confined strictly to replying to arguments" presented in the appellee's brief. Ill. S. Ct. R. 341 (eff. Oct. 1, 2020).

¶ 19        From our review of the record, we agree with Stewart that IDOT raised its "speculation" arguments for the first time on appeal. "It would be unfair for us to require an appellant, when writing his or her opening brief, to anticipate every argument that may be raised by an appellee." *People v. Whitfield*, 228 Ill. 2d 502, 514 (2007). Because the portion of Stewart's reply brief addressing the negotiated and codified pay rates responded to the "speculation" legal arguments first raised in the appellees' brief and were not a "new issue" raised for review, such arguments were not forfeited and may be properly considered by this court. *Id.*; Ill S. Ct. R. 341(j) (eff. Oct. 1, 2020); *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 378-79 (2003); *Bank of New York Mellon v. Rogers*, 2016 IL App (2d) 150712, ¶ 46. Therefore, we deny the "motion to strike or disregard Part A" of Stewart's reply brief.

¶ 20        Turning to the merits, Stewart first argues that the "ALJ, inexplicably relying on Stewart's hearing testimony about the hourly wage he made at the time of his termination from IDOT in February 2007, calculated [his] lost wages from February 2007 to February 2019 using his February 2007 hourly rate at IDOT of $27.00 per hour."

¶ 21        "There is no single 'correct' formula for computing back pay in an employment discrimination case." *Clark v. Human Rights Comm'n*, 141 Ill. App. 3d 178, 182 (1986). Back pay represents the wages the claimant would have earned had he not been discharged. *Ortega v. Chicago Board of Education*, 280 F. Supp. 3d 1072, 1078 (2017). The purpose underlying an award of back pay "is to make the employee 'whole' with respect to salary, raises, sick leave,

vacation pay, pension benefits, *etc.*" *Crowley v. Watson*, 2016 IL App (1st) 142847, ¶ 60; see *Rasimas v. Michigan Department of Mental Health,* 714 F.2d 614, 626 (6th Cir. 1983) (back pay includes sums for pay raises the employee could reasonably have expected to receive). In fashioning a back pay award, the court "must, as nearly as possible, recreate the conditions and relationships that would have been had there been no unlawful discrimination." (Internal quotation marks omitted.) *Ingram v. Madison Square Garden, Inc.,* 709 F.2d 807, 811 (2d Cir. 1983).

¶ 22    The Commission's damages award will not be disturbed on review absent an abuse of discretion. *MIFAB, Inc. v. Illinois Human Rights Comm'n*, 2020 IL App (1st) 181098, ¶ 63. The Commission's award constitutes an abuse of discretion where it is arbitrary or capricious, or "no reasonable person would agree with the Commission's position." *Id.*

¶ 23    Here, the primary issue is whether back pay should include anticipated salary increases. At the public hearing, Stewart did not testify regarding any salary increases he had received at IDOT, which is not surprising given that he had been employed for less than a year when he was discharged (May 1, 2006–February 14, 2007). Although there was no testimony addressing salary increases, Stewart's hearing exhibit number 24 identified the "Individual Gross Pay" earned by comparable coworkers during the discrimination period and demonstrated an increase in pay for the selected individuals. Even in the absence of that exhibit, it is arbitrary to assume that a union employee during the entire discrimination period that spanned more than a decade (between 2007 and 2019) would not have received an increase in the hourly base pay rate. More importantly, the hourly base pay rate for employees in Stewart's position is codified in the Code.[3] See 80 Ill. Adm. Code 310 App. A., TBL. D HR-001 (Teamsters Local #700) (West 2008). Although pay rates were

---

[3]In his reply brief, Stewart stated that "as IDOT is fully aware, IDOT negotiates the wage rates for ETP Highway Maintainers with the Teamsters and those wage rates are then made part of the Illinois Administrative Code."

"frozen for the duration of the 2015-2019 Collective Bargaining Agreement," the negotiated hourly base pay rate had increased from the $27 per hour rate before the pay freeze. *Id.*

¶ 24     It is well established that an "award of back pay should be based on what the plaintiff would have earned had []he not been terminated." *Kirsch v. Fleet Street, Ltd.,* 148 F.3d 149, 166 (2d Cir. 1998). It is equally well established that any "ambiguity or doubt with respect to what the claimant would have received but for the discrimination should be resolved against the discriminating employer." *Rasimas*, 714 F.2d at 626-28.

¶ 25     For purposes of our analysis, section 310.40 of the Code provides, in relevant part, that "each employee subject to this Part *** shall be paid at a rate of pay or step in the appropriate pay grade in the Negotiated Rates of Pay (Appendix A) for the class of position in which the employee is employed." 80 Ill. Adm. Code 310.40 (West 2006). Section 310.20 provides that "[i]t is the policy of the State of Illinois to provide fair and reasonable compensation to employees for services rendered. *** The policy and procedures expressed herein are controlling in matters of employee pay administration." 80 Ill. Adm. Code 310.20 (West 2006). Since IDOT salaries are mandated by the Illinois Administrative Code, annual wage increases are not speculative, they are statutory. It follows that awarding Stewart back pay using only a base pay rate, without accounting for any statutory wage increases, constituted an abuse of discretion. See also *Zaderaka v. Illinois Human Rights Comm'n*, 131 Ill. 2d 172, 178 (1989) (Illinois courts have adopted the federal framework in analyzing employment discrimination cases).

¶ 26     Our conclusion is even more evident based on the Commission's recommendation that Stewart be reinstated "to a position comparable to that from which he was discharged, at the rate of pay *** he would have had if he had not been discharged in February 2007." We remand to the Commission for reconsideration and recalculation of Stewart's back pay, taking into consideration

the hourly pay rates reflected in exhibit 24 and the applicable negotiated pay rates stated in the Code (80 Ill. Adm. Code 310 App. A., TBL. D HR-001 (Teamsters Local #700) (West 2008)).

¶ 27          Stewart also argues that his back pay award should include overtime pay. He "propose[s] the use of averages of his contemporary ETP employees' wages and overtime to determine his back pay from 2007 to 2019 as the numbers were reasonably certain to make him whole and they provided a relatively easy way to calculate backpay."

¶ 28          When calculating back pay, a court may consider evidence of the salaries paid to other employees if a proper foundation is laid "to permit the reasonable inference that [the claimant's] salary would have matched or been pegged to the salaries of others." *Kirsch,* 148 F.3d at 166. Back pay should be "based on what the employee himself would have earned had he not been discharged." *Id.* Although Stewart proposed using the average salary of comparable employees to estimate overtime pay, he did not "present evidence sufficient to permit a reasonable inference that his compensation would have matched or been linked to theirs." *Id.*

¶ 29          No witnesses, including Stewart, testified about overtime procedures at the public hearing.[4] The record contains no evidence reflecting overtime pay rates, how overtime is assigned, whether it is voluntary or mandatory, and/or whether it is offered on the basis of seniority. See *Robinson v. District of Columbia*, 341 F. Supp. 3d 97, 110 (D.D.C. 2018) (calculating back pay includes looking at the overtime hours the claimant worked in the years preceding the discrimination). The Commission rejected Stewart's request for $2.5 million in back pay and overtime, finding that "there is no support for an award that high," and it was "unclear how many hours [he] worked per

---

[4]Upon questioning during oral arguments, counsel for Stewart acknowledged that the evidence in the record regarding overtime was limited to exhibit 24.

week." We find that the record does not contain a proper foundation for the inclusion of overtime in calculating Stewart's back pay award.

¶ 30    In determining whether the Commission abused its discretion regarding its calculation of damages, "this court may not substitute its judgment for that of the agency, or even determine whether the agency exercised its discretion wisely." *Windsor Clothing Store v. Castro*, 2015 IL App (1st) 142999, ¶ 48 (citing *Simmons v. Garces*, 198 Ill. 2d 541, 568 (2002)). Unlike Stewart's entitlement to base pay rate increases, his entitlement to overtime pay is not mandated by the Illinois Administrative Code. In light of our deferential standard of review, we do not find the Commission's award of back pay based on a 40-hour work week without an overtime component, was an abuse of discretion. See 775 ILCS 5/8A-104 (West 2008) (the Commission *may* provide for any of the various categories of statutory relief upon a finding of discrimination); see also *MIFAB*, *Inc.*, 2020 IL App (1st) 181098, ¶ 63 (we review an award of damages for an abuse of discretion).

¶ 31    Next, Stewart argues that "the Commission failed to make him whole" by denying his "request for a tax consequences award" to offset "the increased taxes that would result from a lump-sum payment of back pay damages."

¶ 32    Because back pay awards under discrimination statutes are taxable, the "receipt of a lump sum back pay award could lift an employee into a higher tax bracket [in the year received], meaning the employee would have a greater tax burden than if []he were to have received that same pay in the normal course." *Eshelman v. Agere Systems, Inc.*, 554 F.3d 426, 441 (3d Cir. 2009). But the employee prevailing in a discrimination case is not "presumptively entitled to an additional award to offset tax consequences above the amount to which []he would otherwise be

entitled;" rather, employees "will continue to bear the burden to show the extent of the injury they have suffered." *Id.*

¶ 33    Here, Stewart failed to carry his burden of justifying an increased award amount to offset any tax consequences of receiving a lump sum payment. He did not propose a specific amount or provide ample information to calculate any tax consequence. See *Clemens v. Centurylink Inc.*, 874 F.3d 1113, 1117 (9th Cir. 2017) ("the party seeking relief will bear the burden of showing an income-tax disparity and justifying any adjustment"); see *contra Vega v. Chicago Park District*, 12 F. 4th 696, 707 (7th Cir. 2021) (claimant presented evidence of her actual tax burden during the discrimination period and testified to what she would have owed in taxes had she worked for the discriminatory employer during that period). Therefore, the Commission's decision to not add a tax consequences component to the discrimination award was not an abuse of discretion.

¶ 34                                CONCLUSION

¶ 35    We remand for recalculation of back pay, directing the Commission to award salary increases in the hourly base pay rate during the period of discrimination as reflected in exhibit 24 and in compliance with section 310.40 of the Code. We affirm the award amount in all other respects.

¶ 36    Affirmed in part; reversed in part and remanded for further proceedings.

¶ 37    PRESIDING JUSTICE HYMAN concurring in part; dissenting in part:

¶ 38    Stewart is entitled to what he would have earned had IDOT not discriminated against him. Employees hired about the same time as Stewart and not subjected to discrimination received annual salary increases together with *significant* and regular overtime pay that increased with seniority. In some instances, overtime equaled nearly half the annual salary. According to the majority, Stewart offered no evidence for calculating overtime. Actually, Stewart offered exhibit

24, the same exhibit on which the majority relies in awarding annual salary increases. Exhibit 24 contains all the evidence necessary for calculating overtime.

¶ 39    I agree that the Commission abused its discretion by failing to calculate more than a decade of hourly pay increases. I dissent, however, from the finding that the Commission did not abuse its discretion on Stewart's overtime. Damages in this employment discrimination case should make Stewart whole for the loss of *all forms of compensation and benefits* he would have otherwise earned but for IDOT's intentional racially motivated discrimination. See *Crowley v. Watson*, 2016 IL App (1st) 142847, ¶ 60.

¶ 40    The Human Rights Act Requires Making Stewart Financially Whole

¶ 41    By depriving Stewart of overtime, the Commission stripped Stewart of "whole" relief under the Human Rights Act. 775 ILCS 5/8A-104(J) (West 2020) (Commission to "[t]ake such action as may be necessary to make the individual complainant whole."). Although Stewart specified overtime damages in his complaint and presented evidence to calculate overtime, the Commission never even considered overtime pay for him. As such, the Commission abused its discretion. See, e.g., *Jackson Park Hospital v Illinois Workers Compensation Comm'n,* 2106 IL App (1st) 142431WC ¶ 46 (abuse of discretion to refuse to consider claimant's evidence).

¶ 42    The Commission was obligated to calculate back pay, including overtime, that Stewart had to forgo. *ISS International Service System, Inc. v. Illinois Human Rights Comm'n*, (Commission provides "relief in the form of payment of "actual damages * * * as reasonably determined by the Commission, for injury or loss suffered by the complainant."). See also *Clark v. Human Rights Comm'n*, 141 Ill. App. 3d 178, 182 (1986) (where possible, Commission should use individualized formula). That the Administrative Code mandates pay raises and not overtime, which the majority considers noteworthy, is wholly irrelevant. Whether mandated or not, exhibit 24 plainly shows

IDOT paid overtime to employees in Stewart's position. By denying him comparable overtime pay, along with salary increases, the Commission failed to satisfy the Act's requirements of making Stewart whole.

¶ 43    The Commission and this court regularly award back pay, which includes overtime, "even though a precise amount cannot be determined" and resolves ambiguities against the discriminating employer since "the employer's wrongful act gave rise to the uncertainty." *Calabrese v. Chicago Park District*, 294 Ill. App. 3d 1055, 1070 (1998) (quoting *Clark v. Human Rights Comm'n*, 141 Ill. App. 3d 178, 182 (1986). Notably, I could find no case in any jurisdiction, except this case, suggesting that annual pay raises should be handled one way and the same evidence on overtime another.

¶ 44    The Supreme Court of Montana recognized the dilemma of calculating overtime in *Flink v. American Alternative Insurance Co.*, 301 Mont. 223, 227 (2000). There, the court held that where the evidence establishes that the employee would *more likely than not* work overtime, but the employer did not specifically guarantee or schedule overtime, the number of overtime hours *** is going to be speculative *** in the sense that it will have to be based on circumstantial rather than direct evidence of the actual hours the employee worked; however, this does not preclude the consideration of overtime in calculating the claimant's wage rate." (Emphasis added.) *Id.* at 227.

¶ 45    When an individual complainant, like Stewart, has been denied a benefit he or she would have received, the Commission has no discretion to disregard that category of relief altogether. The majority apparently believes otherwise, quoting section 5/8A-104 of the Human Rights Act that states the Commission "*may* provide for any of the various categories of statutory relief upon a finding of discrimination." (emphasis in original.) *Supra* ¶ 30. A plain reading of section 5/8A-104 reveals that "may" does not mean the Commission has discretion to pick and choose among

the categories; the Act offers categories of relief. No cases support the majority's interpretation of "may" and it conflicts with section 5/8A-104(J), which requires the Commission to take actions "necessary to make the individual complainant whole."

¶ 46 Remarkably, the majority erroneously finds that "the record does not contain a proper foundation for the inclusion of overtime in calculating Stewart's back pay award." *Supra* ¶ 29. To reach this conclusion, the majority disregards exhibit 24 and defies its own reasoning in awarding an increase in hourly base pay.

¶ 47 Stewart did not testify at the public hearing, which as the majority notes, "is not surprising given that he had been employed for less than a year when he was discharged (May 1, 2006– February 14, 2007)." *Supra* ¶ 23. Instead, Stewart relied on exhibit 24, which he introduced into evidence without objection. Exhibit 24 is "a schedule prepared by IDOT containing 'the salary/overtime amounts for 'all IDOT employees who were hired by IDOT in 2006 and then assigned to IDOT's ETP yard located at 35th Street and Normal Avenue in Chicago, Illinois.'" *Supra* ¶ 9.

¶ 48 The majority describes exhibit 24 as identifying " 'Individual Gross Pay' earned by comparable coworkers during the discrimination period and demonstrated an increase in pay for the selected individuals." *Supra* ¶ 23. "Individual Gross Pay" consists of two elements, "Base Pay Amount" and "Overtime Pay Amount." See *Supra* ¶ 12 (exhibit 24 provides "the salary and overtime amounts for comparable employees in the same department and at the same location during the discrimination period."). The majority relies on "Base Pay" yet refuses to recognize "Overtime Pay" despite their together equaling an individual's amount of gross pay. The majority has not and cannot justify electing between them for purposes of damages.

¶ 49        Moreover, inexplicably, the majority treats hourly base pay and overtime pay differently, although the identical evidentiary foundation applies to both. Again to quote the majority, "[e]ven in the absence of [exhibit 24], it is arbitrary to assume that a union employee during the entire discrimination period that spanned more than a decade (between 2007 and 2019) would not have received an increase in the hourly base pay rate." *Id*. Substitute "overtime" for "hourly base pay rate" and the inconsistency becomes glaringly apparent.

¶ 50        Additionally, under the majority's interpretation, few successful complainants would obtain overtime. For undisclosed reasons, the majority deems relevant that "[t]he record contains no evidence reflecting overtime pay rates, how overtime is assigned, whether it is voluntary or mandatory, and/or whether it is offered on the basis of seniority." *Supra* ¶ 29. None of this information—knowing overtime pay rates, overtime assignment practices, whether mandatory or voluntary, and the effect of seniority—makes calculating overtime less indefinite. By their nature, overtime damages involve unknowns, and all the information the majority lists will not answer the relevant inquiry—the amount of overtime the complainant might have earned. This explains why courts turn to evidence of comparable individuals—precisely the information exhibit 24 embodies.

¶ 51        As with salary, calculating lost overtime is a straightforward task due to exhibit 24. Considering IDOT's data demonstrating the consistency and duration of overtime hours for every employee with more than one year as an ETP, Stewart has established that "more likely than not," he would have worked overtime had IDOT not terminated him. See *supra* ¶ 26 ("Our conclusion is even more evident based on the Commission's recommendation that Stewart be reinstated "to a position comparable to that from which he was discharged, at the rate of pay *** he would have had if he had not been discharged in February 2007.").

¶ 52        Nothing in the record indicates Stewart would have worked less than the average of his co-workers. The Human Rights Commission had before it exhibit 24 with all the pertinent evidence necessary to calculate overtime damages. To make Stewart "whole" takes nothing more than a calculator.

¶ 53        By refusing to let Stewart recoup overtime he certainly would have earned, the Commission's decision enables IDOT's deliberate discrimination to remain only partially remedied, a financial whammy for Stewart and a financial windfall for IDOT, the transgressor.

¶ 54                                Federal Decisions

¶ 55        Illinois courts frequently turn to federal decisions for guidance in employment discrimination matters. *See Burnham City Hospital v. Human Rights Commission,* 126 Ill. App. 3d 999 (1984). Just as section 5/8A-104(J) of the Human Rights Act (775 ILCS 5/8A-104(J) (West 2020) provides that the Commission make a complainant "whole" to deter the employer from engaging in future discriminatory conduct, so too does Title VII. See, *e.g.*, *Abermarle Paper Co. v. Moody*, 422 U.S. 405, 418 (1975).

¶ 56        Federal courts considering overtime under anti-discrimination statutes, such as Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, overwhelmingly have held that back pay awards include overtime. See *United States v. City of Warren*, 138 F. 3d 1083, 1097 (6th Cir. 1998) ("[L]ost overtime pay 'should be included in back pay,' and a court must ensure back pay awards 'completely redress the economic injury the claimant has suffered***' ") (quoting *Meadows v. Ford Motor Co.*, 510 F.2d 939, 947 (6th Cir. 1975)); *Pettway v. American Cast Iron Pipe Co.*, 494 F.2d 211, 263 (5th Cir. 1983) ("the ingredients of back pay should include more than 'straight salary.' Interest, overtime, shift differentials, and fringe benefits such as vacation and sick pay" should also be included); see also *Cox v. American Cast Iron Pipe Co.*, 784 F.2d 1546, 1562 (11th

Cir. 1986) ("Interest, overtime, shift differentials, and fringe benefits such as vacation and sick pay are among the items which should be included in back pay.").

¶ 57     No "correct" formula exists for computing the components of damages in an employment discrimination case. See *United States v. Allegheny-Ludlum Industries, Inc.*, 517 F.2d 826, 852 (5th Cir.1975). Generally, courts calculate overtime based on an average of the employee's previously-worked overtime or the overtime of similarly-situated employees. See *Naekel v. Department of Transportation*, 850 F.2d 682, 684 (overtime component of back pay award to wrongfully discharged employee properly based on overtime experience of similarly situated employees who remained employed); *Hill v. Airborne Freight Corp*., Nos. 97-CV-7098, 98-CV-6249, at * 1 (E.D.N.Y. Feb. 20, 2003) (court used average weekly overtime). At oral argument, Stewart's counsel advocated averaging his contemporaries overtime pay as done in *Hill*.

¶ 58     The facts and issues in *Kirsch v. Fleet Street, Ltd.,* 148 F.3d 149 (2d Cir. 1998), a case the majority favorably cites, involved a jury trial in which a sales representative sued for age discrimination. The compensation structure there has no similarity to Stewart's situation and nothing to do overtime. The reviewing court in *Kirsch* rejected the plaintiff's argument that the trial court abused its discretion in refusing to allow him to present evidence about the compensation of other employees who were not similarly situated because they had vastly more responsibilities and experience than the plaintiff. Neither the Commission nor the majority asserts Stewart's duties and responsibilities differed from his co-workers. Indeed, the majority acknowledges Stewart was similarly situated to and doing the same job as the other employees on exhibit 24 in finding he is entitled to the same pay increases they received. Reliance on *Kirsch* is misplaced.

¶ 59     Finally, through no fault of his own and for reasons the Commission left unexplained, Stewart's complaint languished in the Commission for 11 years before a hearing. Although the

unconscionable delay itself has no means of redress, the law ensures the Commission make Stewart as close to whole as possible. Accordingly, I would find the Commission abused its discretion and calculate overtime as well as base salary on remand.